UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 22-70126 |
| | § | |
| JET OILFIELD SERVICES LLC, | § | CHAPTER 11 |
| | § | |
| DEBTOR | § | |
| | § | |

LOUISIANA DEPARTMENT OF REVENUE'S OBJECTION TO
CONFIRMATION OF THE
PLAN OF REORGANIZATION DATED MAY 23, 2023
FILED BY JET OILFIELD SERVICES LLC

**TO THE HONORABLE SHAD ROBINSON, UNITED STATES BANKRUPTCY JUDGE:**

The Secretary of the Louisiana Department of Revenue (hereinafter "LDR"), a creditor of Jet Oilfield Services, LLC, through undersigned counsel, objects to the *Plan of Reorganization Dated May 23, 2023* [hereinafter "the Plan")][Dkt. No. 215] filed by the Debtors for the following reasons and based on the following representations:[1]

**BACKGROUND**

**1.**

On May 25, 2023, the Court entered its *Order Approving Disclosure Statement and Fixing Time for Filing Acceptances and Rejections of Plan, Combined with Notice Thereof* (the "Solicitation Order"). The Solicitation Order set a hearing on confirmation of the Debtor's plan for June 28, 2023, and set June 22, 2023, as the final day for the filing of objections to the Debtor's plan.

**2.**

---

[1] Capitalized words defined in the Debtor's Plan shall have the meanings set forth in the Plan unless otherwise specified herein.

On June 16, 2023, the Court entered its *Order Granting Debtor's Motion to Continue Hearing on Confirmation of Plan of Reorganization* (the "Continuance Order"). The Continuance Order continued the hearing on confirmation of the Debtor's plan by two weeks, from June 28, 2023, to July 12, 2023, but did not extend the due date for objections to the plan and the voting of ballots.

**3.**

LDR has filed three claims in this case (collectively "LDR's Claims" and individually referred to by Claim No.);[2] specifically:

A. **CLAIM NO. 48-1.** Claim No. 48-1 was timely filed as an ***undetermined*** claim based on an **audit In progress** (hereinafter "AIP") for Sales Tax for all tax periods included within 1/1/2020 through and including 6/30/2023. Based on information and belief, this audit is concluded or nearly concluded by the Field Audit Division of the LDR (hereinafter "the Field"). *Preliminary numbers* indicate that the total deficiency determined by the Field is $317,629.81. Based on belief, this sum includes a tax deficiency of $189,040.49, pre-Petition Date interest of $25,767.30 and penalties of $102,822.02.[3] **Undersigned counsel has limited information on this audit as of this time.** This claim will be amended by the LDR with the results of the Field once they are posted to the account with LDR's Field

---

[2] With respect to Claim 49-1, the breakouts of the tax types are in footnotes below are meant to be explanatory of the claim attachment and is not intended to change Claim No. 49-1. If there are any discrepancies, Claim No. 49-1 governs unless or until amended.

[3] The Sales Tax Periods for this same account are also included on LDR's Claim 49-1 as *estimated* smaller amounts because the LDR had not received returns from the Debtor for tax periods 5/31/2021 through and including 12/31/2021. These are system generated estimates and not the results of the Field Audit for these periods. Claims for Audits in Progress are for tax deficiencies based on reviewed returns, and the Claims for the tax periods are for filed returns or estimations of what the unfiled returns may have reflected. The amounts reflected on the claims are not duplicative.

Audit Review and Appeals Division before the date set for the hearing on confirmation of the Plan. Such an amendment will still allow the debtor to utilize the LDR's internal Audit Review and Appeals Process, especially if the Debtors believe there are resolvable issues in the audit for which they have not had time to submit adequate information and documentation to the Field Auditors. Based on information and belief, the Debtor was provided a copy of these preliminary findings with an Audit Exit Letter earlier this month. Undersigned counsel is awaiting confirmation on the date of mailing of the Exit Letters. **The above numbers are informational only for now to make the Court aware of the potential amount of the claim; the numbers are subject to change, either higher or lower.**[4] The tax and prepetition interest on this currently undetermined claim, once ultimately determined and amended (subject to becoming an Allowed Claim) will be entitled to **Priority Tax Claim** classification pursuant to 11 U.S.C. 507(a)(8)(C) and will have to be paid in accordance with 11 U.S.C. 1129(a)(9)(C), with post-petition interest at the rate required by 11 U.S.C. 511 in deferred regular installment payments (with a frequency that can be determined by the court as "regular") over a period not to exceed five years from the Petition Date.

B. **CLAIM NO. 49-1.** Claim No. 49-1 was timely filed in the amount of $127,713.94 including three types of Louisiana taxes: (1) Sales Tax;[5] (2)Corporate (Corporate Income

---

[4] Such an amendment will still allow the debtor to take utilize the LDR's internal Audit Review and Appeals Process if they feel there are resolvable issues in the audit for which they have not had time to submit adequate information and documentation to the Field Auditors. Undersigned counsel has limited information on this audit as of this time.

[5] The Sales Tax Portion of Claim No. 49-1 is for $50,642.71 including Priority Tax Claim (includes tax and pre-Petition Date interest) for $43,796.58 (of which $9,118.58 was for estimates due to unfiled returns, and balance was for a single filed return with less than full payment for the

and Corporate Franchise) Tax;[6] (3) Withholding Tax.[7] (1) The Sales Tax portion of Claim 49-1 includes Sales Tax Periods 5/31/2021 through and including 12/31/2021, *for which LDR has not received tax returns to date and which are included in an ongoing Sales Audit*; and also includes the Sales Tax Period 9/30/2022 for which a return was filed but which was only partially paid by the Debtor leaving a significant balance. (2) The Corporate portion of Claim 49-1 includes estimates for the Corporate Tax Periods 12/31/2020 through 12/31/2021 for which the LDR has not received tax returns to date. These returns are past their due dates, and even extended due dates. (3) The Withholding Tax portion of Claim 49-1 is based on *filed tax returns* for which payment has not been received to date. With respect to all portions of the claim included on the Attachment to Claim 49-1, balances are after deduction of any prepetition payments received. Additionally, LDR groups the claim but tax periods, but penalties are classified as general unsecured on this claim and broken out between Unsecured Priority and Unsecured General at the top of the Attachment

---

period); and Unsecured General for $6,846.13 (all related to unfiled returns). *This includes credit for the single payment of $27,916.00 applied to this tax period.*

[6] The Corporate Tax portion of Claim No. 49-1 is estimated for two unfiled tax periods, 12/31/2020 and 12/31/2021 in the amount of $1,774.34. This amount includes an estimated Priority Tax Claim of $1,134.98 (including tax of $1,100.00 and pre-Petition Date interest in the amount of $34.98) and an Unsecured General Claim of $649.36 for penalties for the unfiled tax periods.

[7] The Withholding Tax portion of Claim No. 49-1 is for $75,296.85 based on filed tax returns, plus accrued pre-Petition Date interest and penalties after credits for payments received. This sum includes a Priority Tax Claim (tax and pre-Petition Date interest for $49,925.69) and an Unsecured General Claim for $25,371.16, after the credit for the aggregated payments received in the amount of $14,142.19 with respect to the Withholding Tax Period 6/30/2021. It is important to note here that this amount is for **taxes that were reported as withheld from wages but not remitted to LDR. These sums are not property of the taxpayer and should have been turned over with the tax returns filed.**

immediately under the case caption and account number. No portion of this claim is classified as Secured.

C. **<u>Claim No. 67-1.</u>** Claim No. 67-1 is for Administrative Tax Expense in the estimated amount of $1,300.00 for Corporate (Corporation Income and/or Corporation Franchise) Tax for the tax period 12/31/2022.[8] The Debtor indicates that it has filed for a federal income tax extension. This return was due on May 15, 2022, unless there is a federal income tax extension. Current policy provides:

> Effective for tax years beginning January 1, 2022, Louisiana Revised Statute 47:287.614(D) reduces the allowed filing extension period for CIFT returns from seven-months to six-months, or the extended due date of the federal return, ***whichever is later***. CIFT taxpayers who cannot file their return by the due date will obtain a six-month state extension if they timely requested an extension for federal income tax purposes. Taxpayers do not need to file a paper or electronic extension request form to obtain the filing extension. **However, they must check the box on Form CIFT-620, *Louisiana Corporation Income Tax and Franchise Tax Return*, indicating that they have timely requested an extension for federal income tax purposes.** For 2022 calendar year filers, the due date is May 15, 2023 and the extended due date is November 15, 2023. Importantly, **the six-month extension of time to file is not an extension of time to pay taxes due**."

**Revenue Information Bulletin No. 23-011, May 5, 2023,** Corporation Income & Franchise Taxes (footnotes omitted) (emphasis added). Accordingly, this tax period will accrue interest and penalties ***from the due date***. It is beneficial to the Debtor's Estate that this return be filed as soon as possible. Additionally, the Bankruptcy Code requires that Administrative Expense Claims be

---

[8] It has come to undersigned counsel's attention that the AIP for Sales Tax, previously mentioned with respect to Claim No. 48-1, also includes post-petition tax periods for 10/31/2022, 11/30/2022, and 12/31/2022. Once the audit schedules are posted to the account system, undersigned counsel will have a better idea whether the audit of these periods determined any deficiencies. If so, an additional Administrative Tax Expense may need to be filed with the Court for those tax periods or Claim No. 67-1 will be amended/supplemented. However, LDR, as a Governmental Unit (as defined by the Bankruptcy Code), is entitled to the exemption from making requests for payment of Admintrative Tax Expenses pursuant to 11 U.S.C. 503(b)(1)(D) for all such expenses allowable pursuant to 11 U.S.C. 503(b)(1)(B)(post-Petition Date tax and interest) and 11 U.S.C. 503(b)(1)(D)(tax penalties related to post-Petition Date tax periods). This is the subject of an objection to Section 2.06 and 4.01 of the Plan which will follow herein below.

paid in full by the Effective Date of the Plan.  See 11 U.S.C. 1129(a)(9)(A).  If the Debtor files for a Federal Extension, this cannot occur and may also affect the Court's ability to determine feasibility of the Plan as proposed since there are three years of Corporate Returns (two (2) pre-petition and one post-Petition Date) that are currently outstanding.

**4.**

No objections have been filed to any of the LDR's Claims and as such the Bankruptcy Code deems such claims "Allowed."

**OBJECTIONS TO THE PLAN**

**5.**

The Plan's definition of an "Allowed" Claim does not comply with the Bankruptcy Code with respect to Priority Tax Claims and Administrative Tax Expense Claims.   A claim is "deemed allowed" unless objected to. 11 U.S.C. 502.  A claim that is simply listed as "Disputed, Contingent or Unliquidated" in the Debtor's schedules is not "objected to."  Objections require notice and a hearing on the objection after a meaningful period of discovery.  Therefore, the LDR's claims are "deemed allowed" for purposes of of the Bankruptcy Code for purposes of feasibility of the Plan and distribution, until such time as the LDR's claims are "objected to."  If an Administrative Tax Expense Creditor and a Priority Tax Claim Creditor has to wait for the end of extended deadlines, for which the plan does not provide for notice on the motion and an opportunity for priority tax claimants to be heard, a Debtor could conceivable (through various ex parte extensions of deadlines for filing objections reciting boiler plate reasons to establish cause) for 4 years Post-Confirmation and finally file an objection to a claim, preventing timely distribution and circumventing the Priority scheme set up by the Bankruptcy Code.  It is not sufficient to say "for

cause" if a notice and hearing on a non-expedited basis is not required for such extensions and a meaningful opportunity to be heard on the matter is not afforded to the priority tax claimants (and indeed for Non-Priority Tax Claimants).

POTENTIAL CURE:  The LDR's objection to these provisions can be cured with language that "with respect to Administrative Tax Expenses and Priority Tax Claims, the deadline for objections to claims shall not be extended after 28 days after the Confirmation Date without (a) the consent of the respective claimant or (b) without providing an opportunity for priority tax claimants to be heard on a *non-expedited* basis."

## DEFINITION OF "ALLOWED" AND TREATMENT OF ADMINISTRATIVE TAX EXPENSES

### 6.

A.  LDR objects to the term "Trustee" in Section 1.01.06(ii)(B).  No Trustee is appointed in this case (at least to undersigned counsel's knowledge), and the term is not a defined term in the Plan.  So it leaves open whose consent is required to "deem" a claim "allowed" for purposes of that paragraph.  28 U.S.C. 959 defines a trustee as including a debtor in possession.  But a debtor in possession becomes a reorganized debtor post Effective Date.  This language needs to be clarified.

**PROPOSED CURE:** (B) is otherwise consented to be deemed "Allowed" by the Debtor or Reorganized Debtor or agreed to by the Debtor or Reorganized Debtor in writing as an "Allowed" claim.

B.  LDR objects to Section 1.01.02 (Administrative Expense Claims Bar Date) and Section 2.06 (Filing of Administrative Expense Claims) of the Plan *to the extent that it does not except*

*governmental units from filing a request for allowance of administrative tax claims* as required by 11 U.S.C. 503(b)(1)(D) for such tax claims permitted by 11 U.S.C. 503(b)(1)(B)(tax and post-petition interest) and 11 U.S.C. 503(b)(1)(C)(penalties related to post-Petition Date tax periods).

**PROPOSED CURE:** These provisions can be cured with language, "Except with respect to Administrative Tax Claims" for Section 1.01.02 and "Except as exempted by the Bankruptcy Code" for Section 2.06.

C. LDR objects to Section 4.01 (Class 1- Allowed Administrative Claims) with respect to subsection (c) with respect to Administrative Tax Claims for the same reasons as above. The provision provides that "[n]o Administrative Expense Claims" (which is defined in Section 1.01.01 of the plan as "expenses of a kind specified in 11 U.S.C. 503(b) and entitled to priority pursuant to 11 U.S.C. 507(a)(2)…") "except for U.S. Trustee Fees, shall be paid *except as approved by the Court Order*. Proofs of Claim asserting Administrative Expense claims, even if not objected to, shall not be sufficient to constitute approval of an Administrative Expense Claims." **This provision contradicts 11 U.S.C. 503(b)(1)(D) and it contradicts 28 U.S.C. 959 and 960** which require the debtor to *voluntarily* comply with state law; it does not require the state to force compliance with respect to the filing and payment of taxes, particularly Adminstrative Tax Expense claims. Governmental Units are not required to file requests for payment pursuant to 11 U.S.C 503(b)(1)(D). Specifically, the Debtor in Possession/Reorganized Debtor/Trustee are required to file and pay in accordance with state law by the due dates (presumptively extended due dates under state law) unless payment of the tax is excused under a specific provision of the Bankruptcy Code. 28 U.S.C. 959 and 960 (summarized). Deferral of payment is permitted by 28 U.S.C. 960 only in cases under chapter 7 of title 11. Of course, 11 U.S.C. 1129(a)(9)(A) and (C) begin with unless otherwise agreed by the holder of the claim. LDR does not agree to treatment

of Administrative Tax Claims in any manner other than what is required by those provisions and allowable under 11 U.S.C. 502 and 503(b)(1)(B)-(D). The Debtor has provisions pursuant to 11 U.S.C. 505(b) with respect to Administrative Tax Claims which allow it to have a tax determined by the court.

**PROPOSED CURE**: No Administrative Expense Claims, except for the U.S. Trustee Fees *and Administrative Tax Expense Claims (allowable pursuant to 11 U.S.C. 503(b)(1)(B)-(C) and entitled to priority pursuant to 11 U.S.C. 507(a)(2)) without a request for payment pursuant to 11 U.S.C. 503(b)(1)(D)),...* shall be approved except by Court Order….”

**POST-PETITION INTEREST, PENALTIES AND CLASS 3 PRIORITY TAX CLAIMS**

**7.**

A. (1) LDR objects to Section 2.04 (Allowance of Post-Petition Interest, Fees, and Costs). The provision provides “Unless otherwise provided by this Plan, a Claim[9] shall not be entitled to post-petition interest, fees or costs.”

**PROPOSED CURE:** “Unless otherwise provided by this Plan or the Bankruptcy Code, a Claim shall not be entitled to post-petition interest, fees or costs.”

(2) LDR further objects to Section 2.04. The provision further provides “The Debtor shall not be required to make specific objection to proofs of claim that allege a right to recover post-petition interest, penalties, fees and accruals with respect to pre-petition claims which are prohibited under 11 U.S.C. 502, and any claim amounts attributable to such post-petition interest,

---

[9] Claim as defined by the Bankruptcy Code and the Plan is broad enough to include Priority Tax Claims as it ends with “arising at any time from the beginning of time through and including the Petition Date.”

etc. shall be disallowed in full upon entry of the Confirmation Order…." **Priority Tax Claims**[10] are entitled to pre-Petition Date interest pursuant to 11 U.S.C. 1129(a)(9)(C) at the rate required by 11 U.S.C. 511. Post petition Administrative Tax Claims are entitled to interest and penalties pursuant to 11 U.S.C. 1129(a)(9)(A) and 11 U.S.C. 503(b)(1)(B)-(C), also at the rate required by 11 U.S.C. 511. Tax Claimants are entitled to penalties on their claims as general unsecured claims. There is no automatic subordination of a penalty claim in Chapter 11; that is available only in Chapter 7 distribution statutes. There is no equitable subordination for tax claims. **It is the Court's job to determine what is "Allowed" pursuant to Section 502** after a written objection filed with a notice or hearing or opportunity to file a response. It is well settled law that a Plan cannot serve as a "Claim Objection." The Debtor cannot be the Judge of what is or is not an "Allowed" Claim under the Bankruptcy Code. This provision exceeds the scope of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Particularly when pursuant to the Federal Rules of Bankruptcy Procedure the Debtor can file an *omnibus objection* with a schedule listing all claims the Debtor believes to have post-petition interest not authorized by Section 502 and notice them for hearing on a single day and require a response to be filed.

    **PROPOSED CURE:** Remove this provision.

    B. LDR also objects to the language in Section 4.03(b) that might be interpreted to include post-petition interest but does not accurately provide for the required interest.[11] The provisions does not say clearly that Priority Tax Claims will be paid interest as required by 11 U.S.C. 1129(a)(9)(C) at the rate required by 11 U.S.C. 511. Section 511 requires payment at "the

---

[10]

[11] The provision says "payment in the amount of their Allowed Claims including applicable statutory rate [sic], in equal installments including interest at the applicable statutory rate over a period beginning on the Effective Date with the final payment due on the date which is five years after the Petition Date."

applicable non-bankruptcy law rate" in effect the month of confirmation and section 1129 requires that interest to commence as of the Effective Date of the Plan, as determined by well settled jurisprudence interpreting section 1129. Additionally, it fails to state "a date not later than five years from the Petition Date."

**PROPOSED CURE:** "Class 3 creditors shall receive payment of the amount of their Allowed Claims, including interest at the rate required by applicable non-bankruptcy law commencing on the Effective Date of the Plan, in equal installments over a period beginning on the Effective Date with the final payment due on the date which is not later than five years from the Petition Date. In the event a Class 3 claim (a Priority Tax Claim) is not an Allowed Claim on the Effective Date, such equal payment shall commence (i) *not sooner than* seven days after the claim becomes an Allowed Claim and (ii) not later than thirty days after the claim becomes an Allowed Claim, and such Class 3 claim shall be paid in full not later than five years from the Petition Date."

RESTRICTION ON PURSUIT OF CLAIMS AGAINTS CERTAIN CO-DEBTORS ON OBLIGATIONS OF DEBTORS

8.

LDR objects to the injunction against the pursuit of any non-debtor liable with the Debtor *for trust tax obligations* for which Louisiana law imposes personal liability pursuant to La. Rev. Stat. Ann. 47:1561.1 absent a default by the debtor, despite the tolling of the statute of limitations while "the provision remains in effect." This violates the Tax Anti-Injunction Act. This Court should not confirm a plan with this provision. LDR call not be enjoined from the collection of tax from a non-debtor pursuant to 26 U.S.C. 1341. The Bankruptcy Court may adjudicate tax liabilities within a Section 505 proceeding or a claim objection, and this does not provide the Court

with jurisdiction to make declarations regarding tax liabilities in the context of a plan injunction. Quattrone Accountants, Inc. v IRS 895 F.2d 921, 925-926 (3d Cir. 1990). A bankruptcy court may only issue a declaratory judgment in a section 505 proceeding "[i]n a case of actual controversy…", 28 U.S.C. 2201(a), and there is no Section 505 proceeding pending at this time.

Additionally, the LDR has set off rights against such parties pursuant to La. Rev. Stat. Ann. 47:1625 which are being violated. In the event the plan is unsuccessful, these individuals may have received valuable refunds which might pay these claims.

PROPOSED CURE: Include within this provision and exception for tax authorities, LDR in particular, from this injunction, such as follows. "For the avoidance of doubt, the Louisiana Department of Revenue ("LDR") shall not be subject to this restriction or "injunction," but rather, the LDR in its sole discretion may elect to enforce its rights under Louisiana law against such Members or Managers of the Reorganized Debtor jointly liable with the Debtor or forbear from doing so. And in the event that LDR should forebear for any period of time, this shall not waive LDR's rights under applicable non bankruptcy law, and may proceed against such Members or Managers at any time in any manner provided under Louisiana law, and same shall be permitted at the LDR's sole discretion. For any time period that LDR forbears from proceeding against such Members or Managers liable with the Debtors for these tax liabilities, the state of limitations against such collection shall be tolled."

DISCHARGE AND PERMANENT INJUNCTION

9.

LDR objects to Section 10.01 to the extent that it says the Debtor shall be discharges from its debts, obligations and liabilities arising *prior to the Effective Date except as provided by this Plan this exception from discharge includes but is not limited to all obligations and the treatment*

*of Claims and the treatment of Claims and Allowed Claims provided for in the Plan.* 11 U.S.C 1141(d) provides that it discharges the Debtor form any debt that arose ***before the date of confirmation***, not those between the Confirmation Date and the Effective Date. As a practical matter, to the extent that claims are subject to an Administrative Claims bar date, such claims may be time barred, but they are not discharged. **This is a particularly important distinction where there is potential third party liability.**

PROPOSED CURE: Change "prior to the Effective Date" to "prior to Confirmation of the Plan" as set forth in 11 U.S.C. 1141(d). [12]

10.

LDR further objects to Sections 2.13 and 10.04 of the Plan to the extent it seeks to impair LDR's setoff and recoupment rights against the Debtor, Reorganized Debtor, and third parties who are liable with the Debtor/Reorganized Debtor for trust tax obligations owed to the LDR. *In addition to preserving setoff rights on the face of their proofs of claim*, the LDR asserts preservation of their setoff rights by objecting to any attempt to limit those rights through the Plan Confirmation should be denied because the Plan's attempts to enjoin creditors' setoff rights do not comply with § 553 of the Bankruptcy Code. Although the Bankruptcy Code does not establish a right of setoff, § 553 is widely recognized as preserving any right to setoff under applicable non-bankruptcy law. Citizens Bank v. Strumpf, 116 S.Ct. 286, 289 (1995). Setoff rights and all aspects of a particular right of setoff, including the waiver of such a right, are determined by non-bankruptcy law. Under § 553 of the Bankruptcy Code, setoff rights survive bankruptcy and are not affected by other sections of the Bankruptcy Code, including § 1141. IRS v. Luongo (In re

---

[12] Compare Section 10.04 for Permanent Injunction which reflects "prior to the Confirmation Date."

Luongo), 259 F.3d 323 (5th Cir. 2001); United States on Behalf of IRS v. Norton, 717 F.2d 767772 (3rd Cir. 1983); In re Garden Ridge Corp., 338 B.R. 627, 632 (Bankr. D. Del. 2006); Carolco Television, Inc. v. National Broadcasting Co. (In re De Laurentis Entertainment Group, Inc.), 963 F.2d 1269, 1276-78 (9th Cir. 1992), *cert. denied*, 506 U.S. 918, 113 S. Ct. 330, 121 L.Ed.2d 249 (1992); Davidovich v. Welton (In re Davidovich), 901 F.2d 1533, 1537 (10th Cir. 1990); Pettibone Corp. V. United States (In re Pettibone Corp.), 161 B.R. 960, 964 (N.D. Ill. 1993); Womack v. United States (In re Womack), 188 B.R. 259 (Bankr. E.D. Ark. 1995); In re Whitaker, 173 B.R. 359 (Bankr. S.D. Ohio 1994). Section 553 "preserves for the creditor's benefit any setoff right that it may haveunder applicable nonbankruptcy law." In re Semcrude, L.P., 399 B.R. 388 (Bankr. D. Del. 2009)(quoting Packaging Indus. Group, Inc. v. Dennison Mfg. Co., Inc. (In re Sentinel Prod. Corp., Inc.), 192 B.R. 41, 45 (N.D. N.Y. 1996)). And "there is no basis in the Code to eliminate [a creditor's] setoff rights" asserted prior to confirmation. In re ALTA+CAST, LLC, 2004 WL 484881 (Bankr. D. Del. 2004) (creditor was entitled to preserve its setoff rights under § 553 where those rights were asserted prior to confirmation). LDR's set off and recoupment rights must be preserved under the Plan, or the Plan cannot be confirmed. If not, the Plan fails to meet the requirements of 11 U.S.C. §1129(a)(1).

## TIME BAR TO CASH PAYMENTS OR UNCLAIMED FUNDS

## 11.

LDR objects to Section 11.05 (Time Bar to Cash Payments). This provision violate 11 U.S.C. 347 which provides in relevant part that:

(a) *"[a]ny money unclaimed at the expiration of the time allowed in a case under chapter 11 of this title for the presentation of a security or the performance of any other act as*

*a condition to* participation in the distribution under any plan confirmed under section

…1129 … of this title, becomes the property of the debtor;" and

(b) 11 U.S.C. §1143 which provides that "if a plan requires presentment … of a security

as a condition to participate in distributions under the plan, such action shall be taken

*not later than five years after the date of the entry of the order of confirmation."*

Therefore, LDR has not later than five years after the date of the entry of the order of confirmation to claim its distributions under the plan **before such distributions may become property of the estate.** Because the plan provides for this to happen within 90 days, the plan violates the Section 347 and 1143. LDR does not agree to give up its right to payment in full of its claims pursuant to the Bankruptcy Code and should not lose its right to payment of any amount due under the code or for a potentially misdirected check or a check that gets lost in the mail. LDR does not waive its right to any distribution to which it may be entitled under the plan as such payments may be made electronically pursuant to the LDR's ordinary procedures and should be made to the address contained on the Proof of Claim or paid electronically.

PROPOSED CURE: Remove this provision or provide that this provision shall not apply to any objecting taxing authority and such funds shall not become "unclaimed funds" and shall remain in the estate until "*not later than five years after the date of the entry of the order of confirmation.*" See 11 U.S.C. 1143.

DEFAULT PROCEDURES AND FILING OF OUTSTANDING RETURNS

12.

(A) The Debtor cannot treat one taxing authority differently than another. LDR avers that it should have default procedures included in the Plan. LDR avers that while it agrees with the default provisions included for the Texas Comptroller of Public Accounts, it believes an "Event of

Default should also include failure to file any post-petition and/or post-Effective Date tax return or timely make any payment due for same shall also be an Event of Default.

PROPOSED CURE: Include LDR within Section 15.04 or provide a separate paragraph substituting LDR for the Texas Comptroller and include the additional Default language.

(B) The Plan fails to provide that the Reorganized Debtor shall be responsible for filing all outstanding pre-petition and Post-Petition returns with the LDR.

PROPOSED CURE: The Reorganized Debtor shall file all outstanding pre-petition tax returns with the LDR not later than six months after the Effective Date of the Plan, and shall timely file all post-petition returns in accordance with Louisiana law, subject to an Event of Default. See (A) above.

13.

Because of the recited violations of the Bankruptcy Code Sections, LDR avers that the Plan is not confirmable pursuant to 11 U.S.C. 1129(a)(1).[13]

14.

LDR reserves all right to amend this Objection prior to the hearing to the extent any issues are not amicably resolved prior to the Confirmation hearing.

15.

LDR reserves its right to amend its Pre-Petition Claims and Administrative Expense Claims to reflect any updated circumstances, such as the filing of a return and/or the conclusion of the Sales AIP prior to the Confirmation hearing, and any missed filing and payment prior to the Confirmation Hearing.

---

[13] LDR has been in contact with Debtor's counsel about the filing of an objection to confirmation of the Plan and intends to attempt to amicably resolve these if issues if possible between now and the time of the Confirmation hearing.

WHEREFORE, the Secretary of the LDR prays that after all due proceedings are had, that this Honorable Court will deny confirmation of the Plan.

Respectfully submitted,

LOUISIANA DEPARTMENT OF REVENUE

/s/ Florence Bonaccorso-Saenz
Florence Bonaccorso-Saenz (La. Bar No. 25493)
Senior Bankruptcy Counsel, Litigation Division
617 N. Third St., Office 780
Post Office Box 4064 (Zip Code 70821-4064)
Baton Rouge, LA  70802
Tele: (225) 219-2083
Direct Email: Florence.Saenz@la.gov

*Pro Hac Vice*  Motion filed.