## SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**") is entered into by and between Jet Oilfield Services, LLC (the "**Debtor**," the "**Reorganized Debtor**," or "**Jet**"), Thomas Smith ("**Smith**"), Lorne Mosley ("**Mosley**"), Brandon Wilkins ("**Wilkins**"), and Oso Reserves, LLC ("**Oso**" or "**OSO**"). Individually, a party herein is referred to as a "**Party**" and collectively, all parties herein are referred to as the "**Parties**."

## RECITALS

WHEREAS, the Debtor filed a Chapter 11 Bankruptcy proceeding on October 12, 2022, in the United States Bankruptcy Court for the Western District of Texas (Midland Division), case no. 22-70126 (the "**Bankruptcy Court**");

WHEREAS, Thomas Smith, Lorne Mosley, and Brandon Wilkins hold the majority membership interest in the Debtor;

WHEREAS, the Debtor and Oso entered into an Accounts Receivable Purchase and Sale Agreement on or about June 25, 2020, which was personally guaranteed by Brian Owen;

WHEREAS, the Debtor and Oso agreed on and entered into STIPULATIONS AND AGREED FINAL ORDER ON DEBTOR'S MOTION FOR USE OF CASH COLLATERAL (A) AUTHORIZING THE USE OF CASH COLLATERAL, (B) PROVIDING ADEQUATE PROTECTION, AND (C) MODIFYING THE AUTOMATIC STAY [Doc. 86], which terms are incorporated herein by reference,

WHEREAS, no challenges were made to Oso's claims during the Challenge Period as ordered by the Court [Doc. 86],

WHEREAS, the Parties now wish to settle their disputes without any Party acknowledging any fault or liability, and

NOW, THEREFORE, in consideration of the mutual promises, covenants, and agreements set forth in the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. **Bankruptcy Court Approval**. This Agreement is subject to approval by the Bankruptcy Court and will become effective (the "**Effective Date**") upon the later of (a) entry of a Final Order (as defined in the DEBTOR'S AMENDED PLAN OF REORGANIZATION DATED AUGUST 24, 2023 (the "**Plan**") by the Bankruptcy Court and (b) the Effective Date of the Plan (as defined therein).

2. **Cash Payment and b1Bank Fee Claim-Payment Surplus.** On or before the Effective Date, the Debtor shall pay the sum of $1,810,959.57 (the "**Cash Payment**"), which shall be applied to reduce the OSO Principal and Interest Claim (as defined in the Plan).

3. **Payment over time/Promissory Note.** In addition to the Cash Payment, the Debtor agrees to pay to Oso or its order, the sum of $7,599,040.43 at the rate of 14% per annum. Beginning on the 15th day of the first month following the Effective Date (the "Oso Principal Note"), the Debtor shall make a

1

monthly payment to Oso in the amount of $176,816.38 via wire or ACH transfer. The Debtor shall execute the Note attached as Exhibit 1 in connection with this obligation. In addition to this Note, the Debtor shall execute an additional note in substantially the same form as Exhibit 3 as more fully described in Paragraph 5 of this agreement described as the Post-Petition Fee Note.

4.      **ADP Access.** At all times following the execution of this Agreement that the Debtor has an outstanding balance owed to Oso, Oso shall have "read-only access" to ADP.

5.      **Maintenance of Collateral Value.**  Pursuant to the Plan, Debtor will pay b1Bank the b1Bank Principal and Interest Claim (as defined in the Plan) in full on the effective date of the Plan. The Debtor has also agreed to pay the b1Bank Attorney Fee Claim to b1Bank as provided in the Plan. To facilitate the payment of the b1Bank Principal and Interest Claim and the b1Bank Attorney Fee Claim, Oso has agreed to reduce its Cash Payment by $689,040.43.

As a result of and in consideration for Oso's agreement to reduce the Cash Payment by $689,040.43, the Debtor will execute the Oso Principal Note described in paragraph 3 above, and an additional promissory note in the amount of $90,000.00 in OSO's favor substantially the same form as the attached Exhibit 3, bearing interest at the rate of 10.25% and paid over 24 equal monthly installments with the first payment being due on the 15th day of the first month following the Effective Date of the Plan (the "**b1Bank Attorney Fee Claim Note**").

As further consideration for this Agreement and to induce Oso to agree to the terms contained herein, the Debtor (a) acknowledges and agrees thatOso has first-priority security interests and first-position liens in the following collateral: accounts, chattel paper, general intangibles, supporting obligations, inventory, instruments, documents, deposit accounts, financial assets, securities, letter of credit rights and all amounts owed to Oso by the Debtor, including the reserve under the factoring agreement between the parties, whether any of the foregoing is owned now or acquired later and wherever located, and all accessions, additions, replacements, and substitutions thereto and all records of any kind related to the foregoing and all proceeds of the foregoing; (b) acknowledges that borrowing money from any creditor that has or will have a superior lien to Oso could result in dilution of Oso's collateral value securing the loan to the Debtor from Oso; (c) agrees, covenants, warrants, and represents that it will not seek, incur, or accept any loans or future borrowings from any party or creditor (hereinafter referenced as a "**Third-Party Loan**") that subordinates, impairs, diminishes, dilutes, or has the effect of subordinating, impairing, diminishing, or diluting Oso's liens in the Debtor's property so long there are outstanding amounts owed to Oso without Oso's prior written consent, which may be given or not given by OSO in its sole and absolute discretion; provided, however, if the Debtor seeks to obtain new financing, which will be secured by only inventory and equipment (as that terms is defined by the Texas Business and Commerce Code),  the Debtor must first offer such financing to Oso. If Oso declines such offer, Oso will consent (in its reasonable discretion) to subordinate its first-priority liens in only equipment and inventory subject to terms and conditions contained herein.  If the parties disagree on the request for subordination, the Debtor may seek permission from the Bankruptcy Court to borrow additional working capital which is secured by Inventory and/or Equipment only  over Oso's objection if – and only if – the Bankruptcy Court authorizes such an increase following (i) at least thirty days' notice, (ii) an evidentiary hearing, and (iii) upon a finding by the Bankruptcy Court that Oso's secured interests remains as protected as they are upon approval of this Agreement; and (d) Debtor acknowledges and agrees that Oso will maintain its lien-position priority rights with respect to its collateral in accordance with all applicable laws.

2

6. **Security Interest.** In addition to the first-priority security interests and liens held by Oso, which the Debtor confirms is binding, valid and enforceable, Smith, Mosely, and Wilkins (individually, a "**Pledgor**" and, collectively, the "**Pledgors**") each agree to grant and pledge to Oso a continuing first-priority security interest and lien in his respective membership interests in Jet (individually and collectively, the "**Pledged Membership Interests**"), as more particularly described herein, which such Pledged Membership Interests in the aggregate constitute at all times at least 40% of the total membership interests in Jet  as additional collateral as consideration for the terms of this Agreement.

The Pledged Membership Interests shall be pledged by each Pledgor by execution of the Security Agreement attached as Exhibit 2. Each Pledgor's pledge of his respective Pledged Membership Interests shall be in equal percentage (based on the total membership interests of Jet that each Pledgor owns and holds) to each other Pledgor's Pledged Membership Interest, as more particularly described on Schedule 1 to the Security Agreement.  Each Pledgor expressly warrants that he is a Manager and Member of the Debtor and has the authority and ability to pledge his membership interest in the Debtor and further warrants and represents that (i) the pledging of the Pledged Membership Interests as collateral to OSO does not violate the terms of Jet's company agreements, (ii) each such pledge is free and clear of any and all liens, security interests, or any other encumbrances, (iii) the Pledgors own at least 40% of the outstanding membership interests in Jet, (iv) at all times, Oso shall have a pledge of at least 40% of the total membership interests in the Debtor, and (v) no Pledgor shall dispose, sell, transfer, or assign any Pledged Membership Interests to any other person, affiliate, or entity (or contract to do any of the foregoing) without Oso's prior written consent. To the extent necessary, each Pledgor expressly represents, warrants, consents, and waives any requirement of any agreement, including the Debtor's operating or governance agreements, that would otherwise prohibit a pledge of any Pledgor's membership interest. Each Pledgor further warrants that the shares have not been certificated and that he has the authority to pledge such interests free and clear of any liens, claims, interests, and encumbrances of any kind or nature.

7. **Additional Security Interest.**  As additional consideration for this Agreement, the Debtor hereby grants additional first-priority security interests and liens in and to the following property, whether any of the following is owned now or acquired later and wherever located: (i) inventory, (ii) equipment (including items that are or become fixtures), (iii) real property, (iv) all patents and patent applications and the inventions and improvements described and claimed therein, including without limitation, all patents and patent applications, together with (a) all reissues, divisionals, continuations, renewals, substitutions, extensions and continuations-in-part thereof, (b) all income, royalties, damages and payments now or hereafter due or payable under and with respect thereto, including without limitation, damages and payments for past, present and future infringements thereof, (c) the right to sue for past, present and future infringements thereof, and (d) all rights corresponding, incident or relating thereto (collectively, the "**Patents**");  (v) all licenses and similar agreements and covenants not to sue with respect to all Patents or any of them (other than any existing license agreements or covenants not to sue which by their terms prohibit assignment, transfer, or the grant of a security interest by Debtor or give the other party thereto the right to terminate the same upon an assignment, transfer, or grant of a security interest therein, which licenses or covenants not to sue do not in the aggregate have a material adverse effect on the value or utility of the Patents or other assets of Debtor individually or as a whole), together with (a) all renewals, extensions, supplements and continuations thereof and supplements thereto, (b) income, royalties, damages and payments now or hereafter due or payable with respect thereto, including without limitation, damages and payments for past, present and future breaches thereof, (c) the right to sue for past, present and future breaches thereof, and (d) all rights corresponding, incident or relating thereto

3

(collectively, the "**Licenses**"); (vi) all trademarks and trademark applications (excluding intent to use applications), together with (a) all continuations, renewals, substitutions, extensions and continuations-in-part thereof, (b) all income, royalties, damages and payments now or hereafter due or payable under and with respect thereto, including without limitation, damages and payments for past, present and future infringements thereof, (c) the right to sue for past, present and future infringements thereof, and (d) all rights corresponding, incident or relating thereto (collectively, the "**Trademarks**"), (vii) all copyrights and copyright applications together with (a) all reissues, divisionals, continuations, renewals, substitutions, extensions and continuations-in-part thereof, (b) all income, royalties, damages and payments now or hereafter due or payable under and with respect thereto, including without limitation, damages and payments for past, present and future infringements thereof, (c) the right to sue for past, present and future infringements thereof, and (d) all rights corresponding, incident or relating thereto (collectively, the "**Copyrights**"), (viii) forty percent (40%) of the aggregate membership interests of the Debtor, which such membership interests shall be pledged by each Pledgor as set forth herein; and (ix) all proceeds and products of the foregoing, including without limitation all payments under insurance or any indemnity or warranty payable in respect of any of the foregoing and all accessions, additions, replacements, and substitutions thereto and all records of any kind related to the foregoing.

All liens and security interests granted to OSO herein and in the Plan, including the liens granted by each Pledgor, shall be (i) of now-owned and hereafter-acquired property, as applicable; (ii) valid, binding, continuing, enforceable, unavoidable, first-priority positions that secure binding, continuing, enforceable, and unavoidable obligations and interests of the Debtor or each Pledgor or such person, as applicable; (iii) in addition to, and not in substitution of, OSO's existing first-priority liens and first-priority security interests; (iv) deemed automatically perfected without reliance on the filing of any financing statements or recordation, and OSO shall not be required to obtain security or similar agreements or corporate resolutions, file further financing statements or record any documents, or take any other steps – including possession – under applicable law to create or perfect any such liens granted to pursuant to the Plan; and (v) although the Debtor acknowledges and agrees that Oso is under NO obligation to advance the Debtor any additional funds, any additional funds advanced by Oso to the Debtor shall be secured and automatically perfected pursuant to the terms and conditions in this Agreement.

Nonetheless, OSO may, but shall not be required to, file financing statements or other documents in any jurisdiction or take any other action to validate or perfect the security interests granted to it under this Plan or the Confirmation Order. If OSO, in its sole and absolute discretion, chooses to file financing statements or other documents or otherwise confirms perfection of such security interests, the Debtor and each Pledgor or person shall, at OSO's request, execute or turnover any document necessary, and such financing statements or similar documents or possession shall be deemed to have been filed or recorded and perfected on the Petition Date, *nunc pro tunc*.

8. **Access to Books and Records.** At all times following the execution of this Agreement that the Debtor has an outstanding balance owed to Oso, the Debtor grants to Oso, their agents, designees or other professional persons, the right to inspect the condition of and appraise the assets of the Debtor's estate and to review the Debtor's books and records during ordinary business hours upon three (3) business days prior notice from OSO; provided, however, that if an Event of Default exists, OSO shall not be required to give the three (3) business days advance notice. The Debtor shall cooperate fully with any such inspection or appraisal.

4

9. **Tax Returns.** The Debtor shall provide copies annually of all state and federal tax returns filed by the Debtor within fourteen (14) days of such returns being submitted to the taxing authority.

10. **Attorneys' fees.** In addition to the payments called for herein, the Debtor agrees to pay the OSO the sum of $300,000 for a portion of its reasonable attorney fees (the "Oso Attorney Fee Claim") in eighteen equal payments to begin on the fifteenth (15th) day of the first month following the Effective Date and continuing on the same day each month thereafter until paid in full, the Oso Attorney Fee Claim shall not accrue interest.

11. **Anti-Layering/Dilution.** Notwithstanding anything herein to the contrary, the Debtor shall not, directly or indirectly, incur any new indebtedness unless such indebtedness is expressly subordinated in right of payment and lien priority to the obligations owed to Oso or otherwise approved by Oso pursuant to paragraph 5. Further, notwithstanding anything herein to the contrary, the Debtor shall not, directly or indirectly, grant any new liens or security interests in assets unless such liens and security interests are expressly subordinated to Oso's liens in all Debtor's assets. In addition to the foregoing, the Debtor and each Individual agree on behalf of itself/himself and the Debtor that, for so long as any obligations owed to Oso shall be outstanding, the Debtor and each Pledgor hereby irrevocably waive any right to grant any new lien or security interest or incur any indebtedness that has the benefit of equal or greater priority with respect to liens or security interests than the liens and security interests granted herein securing the indebtedness and obligations owed to Oso, except as provided in paragraph 5. For the avoidance of doubt, notwithstanding anything herein to the contrary, each Pledgor shall not grant any security interest or liens in the Pledged Membership Interests pledged to Oso pursuant hereto unless such lien and security interest is expressly subordinated to Oso's liens and security interests in such Pledged Membership Interests.

12. **Plan Amendment.** The Debtor agrees to (a) amend its plan of reorganization to include and incorporate the terms of the provisions contained in this Agreement into the Plan and (b) execute any additional documents as necessary to effectuate this Agreement.

13. **Non-Disparagement**. The Parties and their counsel agree not to make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage, or in any way criticize the personal or business reputation, practices, or conduct of the Parties or their counsel.

14. **No Admissions**. Nothing contained in this Agreement is to be construed as an admission of liability by any Party. Any such liability is expressly denied. Nothing contained in this Agreement, nor anything said or communicated in the course of negotiating this Agreement, may be offered in any proceeding as evidence of any liability or wrongdoing by any Party; *provided*, *however*, this Agreement and all communications and statements made in connection herewith may be introduced in any proceeding to enforce any of the terms of this Agreement.

15. **Amendment, Modification, and Waiver**. This Agreement sets forth the entire agreement between the Parties and supersedes any and all prior and contemporaneous oral or written agreements or understandings between the Parties. This Agreement cannot be amended, modified, or supplemented in any respect except by a subsequent written agreement signed by the Parties.

16. **Representation by Counsel; Mutual Drafting**. The Parties agree that they have been

5

DM_US 191594323-3.T19780.0010

represented by counsel during the negotiation and execution of this Agreement and have participated jointly in the negotiation and drafting of this Agreement and hereby waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document will be construed against the party drafting such agreement or document. If an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

17. **Construction**. The captions and headings of the paragraphs, subparagraphs, and sections of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

18. **Governing Law**. This Agreement and any dispute arising out of or related to this Agreement shall be governed and construed in accordance with the laws of the State of Texas, including any applicable statutes of limitation, without regard to any otherwise applicable principles of conflicts of law or choice-of-law rules that would result in the application of the substantive or procedural rules or law of any other jurisdiction.

19. **Successors and Assigns**. This Agreement shall be binding on and inure to the benefit of the Parties and their respective successors and assigns, including any chapter 7 trustee; *provided*, *however*, that this Agreement is not assignable by any Party without the prior written consent of the other Party. Any attempted assignment in contravention of the foregoing shall be null and void and of no force or effect.

20. **Fees and Expenses**. All fees, costs, and expenses incurred in connection with the negotiation, documentation, execution, and delivery of this Agreement shall be borne exclusively by the respective Party incurring such fees, costs, or expenses, except for the OSO Attorney Fee Claim, which is the sole obligation of the Debtor as described in paragraph 10.

21. **Reliance**. Each Party acknowledges that, in executing this Agreement, it is not relying on and has not relied on any representation or statement by the other Party.

22. **Severability**. If any section, paragraph, subparagraph, or sentence within this Agreement is declared by a court of competent jurisdiction to be void or unenforceable, such portion shall be deemed severed from the remainder of this Agreement, and the balance of this Agreement shall remain in full force and effect.

23. **Counterparts**. Delivery of executed signature pages in one or more counterparts (including via facsimile or the electronic exchange of portable document format [PDF] copies) all of which shall together constitute one and the same instrument and shall be sufficient to render this Agreement effective in accordance with its terms.

_____

**Jet Oilfield Services, LLC**          Date
**By:**

6

DM_US 191594323-3.T19780.0010

**Its:**

| | |
|---|---|
| **OSO RESERVES, LLC**<br>**By:**<br>**Its:** | Date |

| | |
|---|---|
| **THOMAS SMITH** | Date |

| | |
|---|---|
| **LORNE MOSLEY** | Date |

| | |
|---|---|
| **BRANDON WILKINS** | Date |

# EXHIBIT 1

DM_US 191594323-3.T19780.0010

**PROMISSORY NOTE**

$7,599,040.43        Lubbock, Texas        August ___, 2023

1.　　FOR VALUE RECEIVED, the undersigned, JET OILFIELD SERVICES, LLC, a Texas Limited Liability Company ("Borrower"), promises to pay OSO RESERVES, LLC, a Texas Limited Liability Company ("Lender"), the sum of SEVEN MILLION AND 00/100 DOLLARS ($7,599,040.43) (the "Principal Amount"), with interest from the inception date at the rate of fourteen percent (14.00%) per annum, both principal and interest payable at 1615 West Loop 289, Lubbock, Texas 79416.  Interest on this note ("Note") shall be computed on the basis of the actual number of days over 365 or 366 days per year and the actual number of days elapsed.

2.　　This Note is made and given in connection with that certain Settlement Agreement ("Settlement Agreement") dated as of _____, 2023 by and among the Borrower, Lender and other parties signatory thereto.

3.　　Interest and principal payments are due in equal monthly installments of One Hundred Seventy-Six thousand, eight hundred and sixteen dollars and 38/100 ($176,816.38), on the fifteenth (15th) day of each month, beginning _____, 2023 and continuing until the expiration of five years from the date of this Note, when the entire amount of principal and accrued, unpaid interest will be payable in full. Payments will be applied first to accrued interest and the remainder to reduction of the Principal Amount.

4.　　The undersigned maker shall pay to the holder hereof a late charge of five per cent (5%) of any monthly installment if such monthly installment is received more than ten (10) days after its due date.

5.　　Default and Remedies.

(a)　　An "Event of Default" under this Note shall mean the occurrence of any of the following events:

(i)　　If the Borrower shall fail to make when due the payment of the accrued interest or Principal Amount or any interest thereon as required by this Note, whether at the due date thereof or by acceleration

8

thereof or otherwise and such payment default remains uncured for a period of two (2) business days after written notice thereof;

(ii)    If the Borrower shall fail to duly observe or perform in any respect any covenant, condition or agreement required to be observed or performed under this Note and such failure remains uncured for a period of fifteen (15) calendar days after written notice thereof;

(iii)    The commencement by the Borrower of any bankruptcy, insolvency, arrangement, reorganization, receivership or similar proceedings under any federal or applicable state law; or the commencement against the Borrower, of any bankruptcy, insolvency, arrangement, reorganization, receivership or similar proceeding under any federal or applicable state law by creditors of the Borrower, provided, that such proceedings shall not be deemed an Event of Default if such proceeding is controverted within thirty (30) days and dismissed and vacated within sixty (60) days of commencement, except in the event that any of the actions sought in any such proceeding shall occur or the Borrower shall take action to authorize or effect any of the actions in any such proceeding;

(iv)    if any proceeding or case shall be commenced in any court of competent jurisdiction seeking dissolution or winding-up of the Borrower;

(v)    if the Borrower is dissolved, either voluntarily or involuntarily; or

(vi)    a breach by the Borrower of any other agreement between it and a Lender, provided such breach is not cured within any applicable cure period.

(b)    Upon an Event of Default:

(i)    (1) other than with respect to an Event of Default pursuant to clause 5(a)(iii) above, the Lender may declare the outstanding Principal Amount, and all accrued and unpaid interest on the Principal Amount, immediately due and payable, and such amount shall be collectible immediately or at any time after such Event of Default and (2) with respect to an Event of Default pursuant to clause 5(a)(iii) above,

9

the outstanding Principal Amount, and all accrued and unpaid interest on the Principal Amount, shall be automatically and immediately due and payable, and such amount shall be collectible immediately or at any time after such Event of Default; and

(ii)    the restrictive covenants contained in the Settlement Agreement shall remain in place until payment of this Note.

(c)    The rights and remedies provided by this Note shall be cumulative, and shall be in addition to, and not exclusive of, any other rights and remedies available at law or in equity.

6.    In addition, if an Event of Default has occurred and is continuing, from and after the date such Event of Default occurred, the entire outstanding Principal Amount of this Note and, to the extent permitted by applicable law, any unpaid interest from time to time due thereon will bear interest, payable on demand, at the rate of eighteen percent (18%) per annum; provided, however, upon the cessation or cure of such Event of Default, this Note will again bear interest at the rate of fourteen percent (14%) per annum, as set forth in Section 1.

7.    This Note may be prepaid in whole or in part without advance notice, premium or penalty.

8.    Each maker, surety, or endorser hereon severally waives grace, demand, presentment, notice of intent to accelerate, notice and protest, and notice of acceleration, and consents that time of payment may be extended without notice.  And it is hereby specially agreed that if this Note is placed in the hands of an attorney for collection, or collected by suit or through Probate or Bankruptcy proceedings, the undersigned agrees to pay reasonable attorney's fees additional on the principal and interest then due hereon. Notwithstanding any provision hereof to the contrary, no provision in this Note shall require or permit the collection of interest or other charges in excess of the maximum rate permitted by applicable State or Federal law. If any such excess is provided for, or adjudicated to be so provided for, any such excess shall be, at the holder's option, applied either as a credit against principal or refunded to maker hereof.

DM_US 191594323-3.T19780.0010

9.      Lender may assign this Note.

10.    **THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES**.

11.    **THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES**.


 **JET OILFIELD SERVICES, LLC**


_____

By:_____

Title: _____

11

# EXHIBIT 2

DM_US 191594323-3.T19780.0010

# SECURITY AGREEMENT

## (PLEDGE)

Thomas Scott Smith, Brandon Carlton Wilkins, and Lorne Randall Moseley

**Thomas Smith**                              (Debtor's Name)

| 930 W Texas Ave Apt #W-1 Waskom | Harrison | TX | 75692 |
|---|---|---|---|
| Mail Address          City | County | State | Zip |

**Brandon Wilkins**

| 8511 Ridgellea St      Dallas | Dallas | TX | 75209 |
|---|---|---|---|
| Mail Address          City | County | State | Zip |

**Lorne Moseley**

| 1433 Suwannee Lane      Benton | Bossier Parish | LA | 71006 |
|---|---|---|---|
| Mail Address          City | County | State | Zip |

(hereinafter called in accordance with the Uniform Commercial Code – each a DEBTOR and collectively DEBTORS) for value received hereby grants to:

Oso Reserves, LLC.
(Secured Party's Name)

(hereinafter called in accordance with the Uniform Commercial Code – SECURED PARTY) whose mail address is:

| 1615 W. Loop 289 | Lubbock | Lubbock | TX | 79416 |
|---|---|---|---|---|
| Mail Address | City | County | State | Zip |

a security interest in and delivers to SECURED PARTY the following described property (which hereinafter is referred to as COLLATERAL) to-wit:

See Schedule 1 attached hereto and made a part hereof.

To secure Jet Oilfield Services, LLC's ("OBLIGOR") obligation to SECURED PARTY pursuant to a promissory note dated August ___, 2023 in original aggregate principal amount of $7,000,000 (the "Note") and all other interest, costs, fees, and premiums in connection therewith (collectively, the "Obligations").

13

DM_US 191594323-3.T19780.0010

The Debtor hereby acknowledges and agrees that the security interest created hereby in the Collateral constitutes continuing collateral security for all of the Obligations, whether now existing or hereafter arising, including, without limitation, any amounts currently outstanding and any future advances.

The warranties, covenants, terms and agreements set forth below are incorporated herein and made a part hereof for all intents and purposes.  DEBTOR and SECURED PARTY as used in this Security Agreement include the heirs, executors, or administrators, successors or assigns of those parties.

**DEBTORS WARRANT, COVENANT AND AGREE:**

1.     That all financial or credit statements deposited with or relied upon by SECURED PARTY prior to, contemporaneously with, or subsequent to execution of this Security Agreement are or will be true, correct, complete, valid and genuine.

2.     That the Collateral: (a) is genuine, free from adverse claims or other security interest, default, or defenses; and (b) the same comply with applicable laws concerning form, content and manner or preparation and execution.

3.   That DEBTOR owns the COLLATERAL and has the right to transfer any interest therein; the COLLATERAL is not subject to the interest of any third person; and DEBTOR will defend the COLLATERAL and its proceeds against the claims and demands of all third persons.

4.   That DEBTOR shall pay prior to delinquency all taxes, charges, liens and assessments against the COLLATERAL, and upon DEBTOR'S failure to do so, SECURED PARTY at its option may pay any of them and shall be the sole judge of the legality or validity thereof and the amount necessary to discharge the same. Such payment shall become part of the indebtedness secured by this Security Agreement and shall be paid to SECURED PARTY by DEBTOR immediately without demand, with interest thereon at the rate of ten percent (10%) per annum.

5.   SECURED PARTY'S duty with reference to the COLLATERAL shall be solely to use reasonable care in the custody and preservation of COLLATERAL in SECURED PARTY'S possession, and to receive collections, remittances and payments on such COLLATERAL as and when made and received by SECURED PARTY and the SECURED PARTY shall have the option of applying the amount or amounts so received, after deductions of any collection costs incurred, as payment upon any indebtedness of DEBTOR to SECURED PARTY pursuant to provisions of this Security Agreement or holding the same for the account of DEBTOR. SECURED PARTY shall not be responsible in any way for any depreciation in the value of the COLLATERAL nor shall any duty of responsibility whatsoever rest upon SECURED PARTY to take necessary steps to preserve rights against prior parties or to enforce collection of the COLLATERAL by legal proceedings or otherwise.

6.   **Title** – Except for the security interest hereby granted, DEBTORS have, or upon acquisition will have, full fee simple title to Collateral free from any lien, security interest, encumbrance, or claim, and DEBTORS will at DEBTORS' cost and expense defend any action which may affect SECURED PARTY'S security interest in or DEBTORS' title to Collateral.

7.   **Financing Statement** – That no Financing Statement covering the Collateral or any part thereof is on file in any public office and at SECURED PARTY'S request DEBTORS will join in executing all necessary

DM_US 191594323-3.T19780.0010

Financing Statements in forms satisfactory to SECURED PARTY and will pay the cost of filing same and will further execute all other instruments deemed necessary by SECURED PARTY and pay the cost of filing same.

8.  **Sale, Lease, or Disposition of Collateral** -  DEBTORS will not, without written consent of SECURED PARTY sell, contract to sell, lease, encumber, transfer, or dispose of Collateral or any interest therein until this Security Agreement and all debts secured thereby have been fully satisfied.

9.  **Assignment of Security Agreement** - This Security Agreement, SECURED PARTY'S rights hereunder or the indebtedness hereby secured may be assigned from time to time to any subsequent holder of the Note, and in any such case the Assignee shall be entitled to all of the rights, privileges and remedies granted in this Security Agreement to SECURED PARTY, and DEBTORS will assert no claims or defenses he may have against SECURED PARTY against the Assignee except those granted in this Security Agreement.

10.  **Delay not to constitute waiver -** SECURED PARTY may delay exercising or omit to exercise any right or remedy under this Security Agreement without waiving that or any other past, present or future right or remedy, except in writing signed by SECURED PARTY.

11.  **Additional Security Interest** – The security interest in the Collateral hereby granted by each DEBTOR to SECURED PARTY for the purpose of securing the Obligations includes, without limitation, each DEBTOR'S economic and management rights with respect to its membership interests in Obligor, rights to subscribe, liquidating dividends, stock dividends paid in stocks, any securities, or other property which DEBTOR may hereafter become entitled to receive in each case on account of DEBTOR'S ownership or interest in the Collateral and all proceeds and substitutions of the Collateral all of which each DEBTOR shall immediately deliver to SECURED PARTY.  The terms and provisions of this paragraph shall not be construed to mean that DEBTOR is authorized to sell or dispose of the Collateral or any part thereof without SECURED PARTY'S consent.  If at any time the SECURED PARTY does not have a pledge of at least 40% of the total membership interests in the Obligor, each DEBTOR shall promptly take all actions necessary or requested by SECURED PARTY to ensure that SECURED PARTY has a pledge at all times of at least 40% of the total membership interests in the Obligor, including, but not limited to, updating schedules to this agreement or delivering additional documentation to evidence an additional pledge of such DEBTOR's membership interest in OBLIGOR in order to satisfy the foregoing.

12.  **Taxes** - DEBTORS will pay promptly when due all taxes and assessments upon the Collateral or for its use and operation.

13.  **Debtor Includes-Texas Law Applicable** - DEBTORS as used in this instrument shall be construed as singular or plural to correspond with the number of persons executing this instrument as DEBTORS.  If more than one person executes this instrument as DEBTORS, their obligations under this instrument shall be joint and several.  Terms used in this instrument which are defined in the Texas Uniform Commercial Code are used with the meanings as therein defined. The law governing this secured transaction shall be that of the State of Texas in force at the date of this instrument.

14.  **Future Indebtedness** - The security interest hereby granted secures the indebtedness of OBLIGOR to SECURED PARTY, direct or indirect, absolute or contingent, due or to become due, whether existing or hereafter arising.

15

DM_US 191594323-3.T19780.0010

15.     **Reimbursement of Expenses** - At SECURED PARTY'S option, SECURED PARTY may discharge taxes, liens, interest, or perform or cause to be performed for and in behalf of DEBTOR any actions and conditions, obligations or covenants which DEBTORS have failed or refused to perform and may pay for the preservation and protections of Collateral and all sums so expended, including but not limited to, reasonable attorney's fees and other legal expenses incurred or paid by SECURED PARTY in exercising or protecting SECURED PARTY'S interest, rights and remedies under this Security Agreement, court costs, agent's fees, or commissions, or any other costs or expenses shall bear interest from the date of payment at the rate of 14% per annum and shall be payable at the place designated in the above described note and Settlement Agreement with Obligor and shall be secured by this Security Agreement.

16.  **Change of Residence or Place of Business** - DEBTORS will promptly notify SECURED PARTY of any change of DEBTORS' residence, or chief place of business.

17.  **Attorney-in-Fact** - DEBTORS hereby appoint SECURED PARTY DEBTORS' attorney-in-fact to do any and every act which DEBTORS is obligated by this Security Agreement to do and to exercise all rights of DEBTORS in Collateral and to make collections and to execute any and all papers and instruments and to do all other things necessary to preserve and protect Collateral and to protect SECURED PARTY'S security interest in said Collateral.

18.  **Time-Waiver** - DEBTORS agree that in performing any act under this Security Agreement and the note secured thereby that time shall be of the essence and that SECURED PARTY'S acceptance of partial or delinquent payments, or failure of SECURED PARTY to exercise any right or remedy shall not be a waiver of any obligation of DEBTORS or right of SECURED PARTY or constitute a waiver of any other similar default subsequently occurring.

19.  **Default** - DEBTORS shall be in default under this Security Agreement upon the happening of any of the following events or conditions:

1.   Default in the payment or performance by DEBTORS of any obligation, covenant or liability contained or referred to herein;

2.   Any warranty, representation or statement made or furnished to SECURED PARTY by or on behalf of DEBTORS proves to have been false in any material respect when made or furnished;

3.   Any event which results in the acceleration of the maturity of the indebtedness of DEBTORS to others under any indenture, agreement or undertaking;

4.   The making of any levy, seizure, or attachment of any of the Collateral; or

5.   Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the Collateral assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against DEBTORS.

DM_US 191594323-3.T19780.0010

20. **Remedies** - Upon the occurrence of any such event of default, and at any time thereafter, SECURED PARTY may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of the same and exercise any and all of the rights and remedies provided by the Uniform Commercial Code of Texas, as well as all other rights and remedies possessed by SECURED PARTY. SECURED PARTY may, at SECURED PARTY'S option, sell, assign and deliver all or any part of Collateral at any Broker's Board or at public or private sale, without written notice or advertisement and bid and become purchaser at any public sale or at any Broker's Board. If notice to DEBTORS is required by the Uniform Commercial Code of Texas of public or private sale of any part of Collateral, as to that part of Collateral which the Uniform Commercial Code of Texas requires said notice. SECURED PARTY will give DEBTORS reasonable notice of the time and place of any public or private sale thereof and the requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of DEBTORS shown at the beginning of this Security Agreement at least five (5) days before the time of the sale or disposition. SECURED PARTY may apply the proceeds of any disposition of Collateral available for satisfaction of DEBTORS' indebtedness and the expenses of sale in any order of preference which SECURED PARTY, in SECURED PARTY'S sole discretion determines.

Dated: August _____, 2023.

**DEBTORS:**

 

_____

**Thomas Smith**

 

_____

**Brandon Wilkins**

 

_____

**Lorne Moseley**

DM_US 191594323-3.T19780.0010

## **Schedule 1 to Security Agreement:**

To secure the prompt payment and performance in full when due, whether at maturity, by lapse of time, acceleration, mandatory prepayment or otherwise, of the Obligations, each Debtor hereby grants to Secured Party a continuing security interest in, and a right to set off against, any and all right, title and interest of such Debtor in and to the Pledged Equity, in each case, whether now owned or existing or hereafter acquired, owned, or existing, and wherever located (the "Collateral"):

"Pledged Equity" means, with respect to each Debtor, a pro rata percentage of his respective membership interests in OBLIGOR, which in the aggregate and at all times constitute at least 40% of the total membership interests in OBLIGOR, including, but not limited to, the following:

a.      all equity interests representing a dividend thereon, or representing a distribution or return of capital upon or in respect thereof, or resulting from an additional issuance thereof, a stock split, revision, reclassification or other exchange therefor, and any subscriptions, warrants, rights or options issued to the holder thereof, or otherwise in respect thereof;

b.      all other payments due or to become due to such Debtor in respect of such equity interests, whether under any by-laws, operating agreements, limited liability company agreements, other governing documents, by-law or otherwise, whether as contractual obligations, damages, insurance proceeds or otherwise;

c.      all claims, rights, power, privileges, authority, options, security interests, liens and remedies, if any, of such Debtor, under any governing document, or at law, or otherwise in respect of such equity interests;

d.      all future claims, if any, of such Debtor against the equity issuer of such equity interests for moneys loaned or advanced, for services rendered or otherwise;

e.      all of such Debtor's rights under any by-laws, limited liability company agreement, operating agreement or other governing documents, at law or otherwise to exercise and enforce every right, power, remedy, authority, option and privilege of such Debtor relating to such equity interests, including without limitation, any voting rights;

f.      in the event of any consolidation or merger involving the equity issuer thereof and in which such equity issuer is not the surviving person, all shares of each class of the equity interests of the successor person formed by or resulting from such consolidation or merger or into which such equity interests was exchanged or converted;

g.   with respect to such equity interests, all of such Debtor's economic and management rights, title and interest in the equity issuer, whether under the limited liability operating agreement or other governing documents, at law or otherwise, including such Debtor's limited liability company interest (as such term is defined under applicable law), such Debtor's status as a "member" (as such term is defined under applicable law) therein, such Debtor's right to participate in the management of the business and affairs of the equity issuer (including, without limitation, any voting rights), such Debtor's capital therein and all of

DM_US 191594323-3.T19780.0010

its interest in all profits, losses, assets and other distributions to which such Debtor shall at any time be entitled in respect of such equity interests;

h.      all books, records, ledger cards, files, correspondence, customer lists, blueprints, technical specifications, manuals, computer software, computer printouts, tapes, disks and related data processing software and similar items that at any time evidence or contain information relating to any of the Collateral or are otherwise necessary or helpful in the collection thereof or realization thereupon; and

i.   all accessions and all proceeds and products of any and all of the foregoing, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing.

As of the date of this agreement, the Pledged Equity is reflected in the table of equity interests set forth on Schedule A hereto, as such Schedule A may hereafter be amended or modified in writing from time to time to ensure compliance with the terms of this agreement.  For the avoidance of doubt, the failure of the parties hereto to so update Schedule A to reflect any additional Pledged Equity after the date hereof that is required to be pledged as Collateral shall not operate as a waiver by Secured Party of all obligations and covenants of each Debtor to ensure at all times the Collateral shall at all times constitute at least 40% of the total membership interests in OBLIGOR.

DM_US 191594323-3.T19780.0010

**Schedule A**

| Equity Issuer | Debtor | | Percentage of ownership of OBLIGOR held by Debtor | Percentage of Debtor's ownership of OBLIGOR pledged by Debtor |
|---|---|---|---|---|
| Jet Oilfield Services, LLC | Thomas Smith | 40.0% | 16.0% | |
| Jet Oilfield Services, LLC | Lorne Mosley | 30.0% | 12.0% | |
| Jet Oilfield Services, LLC | Brandon Wilkins | 30.0% | 12.0% | |

1

# EXHIBIT 3

DM_US 191594323-3.T19780.0010

**POST-PETITION FEE NOTE**

$90,000.00_____                Lubbock, Texas                August ___, 2023

1.      FOR VALUE RECEIVED, the undersigned, JET OILFIELD SERVICES, LLC, a Texas Limited Liability Company ("Borrower"), promises to pay OSO RESERVES, LLC, a Texas Limited Liability Company ("Lender"), the sum of NINETY-THOUSAND DOLLARS ($90,000) (the "Principal Amount"), with interest from the inception date at the rate of fourteen percent (10.25%) per annum, both principal and interest payable at 1615 West Loop 289, Lubbock, Texas 79416.  Interest on this note ("Note") shall be computed on the basis of the actual number of days over 365 or 366 days per year and the actual number of days elapsed.

2.      This Note is made and given in connection with that certain Settlement Agreement ("Settlement Agreement") dated as of _____, 2023 by and among the Borrower, Lender and other parties signatory thereto.

3.      Interest and principal payments are due in equal monthly installments of FOUR THOUSAND, ONE HUNDRED AND 63 DOLLARS AND 44/100 ($4,163.44), on the fifteenth (15th) day of each month, beginning _____, 2023 and continuing until the expiration of five years from the date of this Note, when the entire amount of principal and accrued, unpaid interest will be payable in full. Payments will be applied first to accrued interest and the remainder to reduction of the Principal Amount.

4.      The undersigned maker shall pay to the holder hereof a late charge of five per cent (5%) of any monthly installment if such monthly installment is received more than ten (10) days after its due date.

5.      Default and Remedies.

(a)      An "Event of Default" under this Note shall mean the occurrence of any of the following events:

3

DM_US 191594323-3.T19780.0010

(i)     If the Borrower shall fail to make when due the payment of the accrued interest or Principal Amount or any interest thereon as required by this Note, whether at the due date thereof or by acceleration thereof or otherwise and such payment default remains uncured for a period of two (2) business days after written notice thereof;

(ii)     If the Borrower shall fail to duly observe or perform in any respect any covenant, condition or agreement required to be observed or performed under this Note and such failure remains uncured for a period of fifteen (15) calendar days after written notice thereof;

(iii)     The commencement by the Borrower of any bankruptcy, insolvency, arrangement, reorganization, receivership or similar proceedings under any federal or applicable state law; or the commencement against the Borrower, of any bankruptcy, insolvency, arrangement, reorganization, receivership or similar proceeding under any federal or applicable state law by creditors of the Borrower, provided, that such proceedings shall not be deemed an Event of Default if such proceeding is controverted within thirty (30) days and dismissed and vacated within sixty (60) days of commencement, except in the event that any of the actions sought in any such proceeding shall occur or the Borrower shall take action to authorize or effect any of the actions in any such proceeding;

(iv)     if any proceeding or case shall be commenced in any court of competent jurisdiction seeking dissolution or winding-up of the Borrower;

(v)     if the Borrower is dissolved, either voluntarily or involuntarily; or

(vi)     a breach by the Borrower of any other agreement between it and a Lender, provided such breach is not cured within any applicable cure period.

(b)     Upon an Event of Default:

DM_US 191594323-3.T19780.0010

(i)      (1) other than with respect to an Event of Default pursuant to clause 5(a)(iii) above, the Lender may declare the outstanding Principal Amount, and all accrued and unpaid interest on the Principal Amount, immediately due and payable, and such amount shall be collectible immediately or at any time after such Event of Default and (2) with respect to an Event of Default pursuant to clause 5(a)(iii) above, the outstanding Principal Amount, and all accrued and unpaid interest on the Principal Amount, shall be automatically and immediately due and payable, and such amount shall be collectible immediately or at any time after such Event of Default; and

(ii)      the restrictive covenants contained in the Settlement Agreement shall remain in place until payment of this Note.

(c)      The rights and remedies provided by this Note shall be cumulative, and shall be in addition to, and not exclusive of, any other rights and remedies available at law or in equity.

6.      In addition, if an Event of Default has occurred and is continuing, from and after the date such Event of Default occurred, the entire outstanding Principal Amount of this Note and, to the extent permitted by applicable law, any unpaid interest from time to time due thereon will bear interest, payable on demand, at the rate of eighteen percent (18%) per annum; provided, however, upon the cessation or cure of such Event of Default, this Note will again bear interest at the rate of fourteen percent (14%) per annum, as set forth in Section 1.

7.      This Note may be prepaid in whole or in part without advance notice, premium or penalty.

8.      Each maker, surety, or endorser hereon severally waives grace, demand, presentment, notice of intent to accelerate, notice and protest, and notice of acceleration, and consents that time of payment may be extended without notice.  And it is hereby specially agreed that if this Note is placed in the hands of an attorney for collection, or collected by suit or through Probate or Bankruptcy proceedings,

5

DM_US 191594323-3.T19780.0010

the undersigned agrees to pay reasonable attorney's fees additional on the principal and interest then due hereon. Notwithstanding any provision hereof to the contrary, no provision in this Note shall require or permit the collection of interest or other charges in excess of the maximum rate permitted by applicable State or Federal law. If any such excess is provided for, or adjudicated to be so provided for, any such excess shall be, at the holder's option, applied either as a credit against principal or refunded to maker hereof.

9.      Lender may assign this Note.

10.     **THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES**.

11.     **THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES**.


**JET OILFIELD SERVICES, LLC**


_____

By:_____

Title: _____

6