

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: August 31, 2023.**

_____
**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **JET OILFIELD SERVICES, LLC** | § | **Case No.  22-70126-smr** |
| **Debtor** | § | **(Chapter 11)** |
| | § | |
| | § | |
| | § | |

### ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION  DATED AUGUST  28, 2023

CAME ON for hearing on the 22nd, 24th and 29th days of  August 2023, confirmation of Debtor's Amended  Plan of Reorganization dated August 28, 2023. The Debtor filed an Amended Plan dated August 28, 2023, containing non-material modifications ("Amended Plan"), which is attached to this Order (the "Confirmation Order"). The Debtor announced that it had agreed to make additional modifications to the Plan as provided herein.

The Court finds that the Amended Plan and all related documents (herein "Plan") meets the requirements of 11 U.S.C. § 1129, and in addition to the findings set forth by the Court on the record at the hearing, specifically the Court finds as follows:

1.      The Plan complies with the applicable provisions of title 11.

2.       Debtor as Plan proponent has complied with the applicable provisions of title 11.

3.     The Plan has been proposed in good faith for the purpose of repaying the debts of the Debtors and not by any means forbidden by law.

4.     Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Court as reasonable.

5.     The Debtors have disclosed the identity of persons who are to serve in management of the Debtors after confirmation of the Plan and their continued service is in the best interest of the Debtors and creditors.

6.     No governmental regulatory commission has authority over the rates charged by the Debtors.

7.     Each creditor has either accepted the Plan or will receive more under the Plan than it would receive in a chapter 7 liquidation.

8.     Each class of claims has either accepted the plan, did not vote or is unimpaired.

9.     All priority creditors will receive the treatment required by 11 U.S.C. §1129(a)(9).

10.     At least one class of impaired claims has accepted the plan without regard to votes cast by insiders.

11.     Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization.

12.     All fees under section 1930 of title 28 have been paid or will be paid as they accrue.

13.     The Debtor will continue to maintain its retirement plan.

14.     Debtor is not under a domestic support obligation.

15.     Any transfers under the Plan will be made in accordance with applicable non-bankruptcy law.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1.     The Plan is confirmed pursuant to section 1129 of the Bankruptcy Code. A copy of the Plan is attached as Exhibit A. The unsigned settlement agreement attached to the Amended Plan dated August 28, 2023 is hereby replaced with the executed Settlement Agreement attached as Exhibit B. The documents attached to and referenced in the Plan are integral to the Plan and are approved by the Court, and the Debtor is authorized to take all actions required or appropriate under the Plan and all Plan-related documents and this Confirmation Order.

2.    The terms of the Plan and Plan-related documents, including exhibits, are incorporated herein by reference, and are an integral part of this Confirmation Order.

3.    Pursuant to Sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and all documents arising under or related to the Plan shall be enforceable notwithstanding any otherwise applicable nonbankruptcy law and the Debtors and the Liquidating Trustee are entitled to enforce the terms of this Confirmation Order.

4.    The failure to specifically include or refer to any particular article, section, or provision of the Plan or Plan-related document or exhibit does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

5.    As to Cannon Advance only, para. 4.12(b) is modified to provide that Canon Advance shall retain its rights to pursue any third parties. Nothing herein shall constitute a finding that the claims filed by Cannon Advance were timely or untimely, such issue being expressly reserved. If the claims of Canon Advance are allowed, they shall be treated under Class 15. The Unsecured Claims Representative appointed pursuant to the Plan shall have full authority to appear and be heard in any hearing on allowance of the claims of Canon Advance.

6.    Para. 4.03 is supplemented to include the following additional language with respect to the Internal Revenue Service:

The Internal Revenue Service shall have an Allowed Priority Tax Claim in the amount of $382,190.53, with its Allowed Administrative Claim, if any, to be determined. The Allowed Combined Claim shall be paid in full, with 7% interest per annum, amortized over a 55-month period and paid in monthly installments of approximately $4,549.89 or one full payment in the amount of $382,190.53 commencing on the effective date and continuing on the same day of each month thereafter until the Allowed Combined Claim is paid in full. Debtor shall have the right to prepay this claim at any time after the Effective Date without incurring prepayment penalties or interest. Class 3 is impaired under the Plan.

7.    All federal tax payments under the Plan shall be paid to the Internal Revenue Service, by mail to:

Internal Revenue Service
MC 5027 DAL
1100 Commerce St.
Dallas, TX  75242

Payments that are mailed in shall be made by check or money order made payable to the United States Treasury and should be identified with the Debtor's bankruptcy case number 22-70126. Payments shall be deemed made on the date of receipt by the Internal Revenue Service.

The running of the statute of limitations on collection is agreed to be stayed during the period the Debtor is permitted to make payments under this Plan (55 months or 1 month).

8. Para. 15.05 shall be added as follows:

The Debtor shall remain current with all of its post-confirmation federal tax obligations, including making deposits and payments and filing all returns, during the period the Debtor is required to make payments under this Plan. A failure to make post-confirmation tax deposits, payments, and filings in a timely fashion, as required by the Internal Revenue Code, shall be deemed a material default under the terms of the Plan. The Debtor shall be allowed a fifteen-day grace period with respect to the timeliness of these obligations before being deemed a default of the Plan. Said grace period shall not be applicable with respect to the Debtor being found liable for penalties and interest as determined by the Internal Revenue Code.

In the event of default, the Internal Revenue Service shall give written or telephonic notice to the Debtor and they shall have fifteen days from the notice date to cure or otherwise establish there has been no default. In the event the default is not cured, the Internal Revenue Service shall have the option, at its discretion, to accelerate the entire indebtedness due to the Internal Revenue Service under the Plan or take any other collection action authorized by law with respect to the unpaid Allowed Priority Claim.

9. The Debtor shall file an Application for Final Decree, which shall include a Certificate and Summary report by the Debtor that it is current upon all Plan payments pursuant to the Plan and has filed all monthly operating reports and post-confirmation reports required.

10. The Debtor will pay on the Effective Date all statutory fees due and owing under 11 U.S.C. § 1930(a)(6) as of the Effective Date as required under 11 U.S.C. § 1129(a)(12). The Debtor shall continue to pay all statutory fees due under 11 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed.

11. Following confirmation of this Plan, the Debtor shall file all outstanding Monthly Operating Reports, and timely file its Monthly Operating Report for the month of

August 2023. Thereafter, the Debtor shall timely file U.S. Trustee Form 11, Post-Confirmation Report, until this case is closed, dismissed, or converted.

12.     If there is a conflict or inconsistency exists between the Confirmation Order, on one hand, and the Plan or Plan-related documents, on the other hand, the Plan and Plan-related documents shall control.

13.      Notwithstanding Bankruptcy Rule 3020(e), the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry.

#   #   #

Approved as to form:

*/s/Stephen W. Sather*
Stephen W. Sather
Attorney for Debtor

/s/*Mark Taylor*
Mark Taylor
Attorney for Unsecured Creditors' Committee

/s/ *Patrick L. McCune*
Patrick McCune
Attorney for b1BANK

/s/*Jody Jenkins*
Jody Jenkins
Attorney for OSO Reserves, LLC

/s/*Scott Lawrence*
Scott Lawrence
Attorney for Thomas Smith, et al

Submitted by:

Stephen W. Sather
BARRON & NEWBURGER, P.C.
7320 N. MoPac Expwy., Suite 400
Austin, Texas 78731
(512) 476-9103

EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| | § | |
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| JET OILFIELD SERVICES, LLC | § | Case No. 22-70126-tmd |
| Debtor | § | |
| | § | |
| | § | |

# <u>DEBTOR'S AMENDED PLAN OF REORGANIZATION</u>
# <u>DATED AUGUST 28, 2023</u>

**Stephen W. Sather**
**BARRON & NEWBURGER, P.C.**
7320 N. Mopac Expwy, Ste. 400
Austin, Texas 78701
(512) 476-9103
ATTORNEY FOR DEBTOR

# TABLE OF CONTENTS

ARTICLE I - DEFINITION AND USE OF TERMS ................................................................... 1
    1.01 **Defined Terms** .............................................................................................. 1
    1.02 **Number and Gender of Words** ................................................................... 6
    1.03 **Terms Defined in the Bankruptcy Code** .................................................. 6
    1.04 **Headings** ...................................................................................................... 6
    1.05 **Interpretation** ............................................................................................. 6
    1.06 **Time Computation** ..................................................................................... 6
ARTICLE II - PROVISIONS APPLICABLE TO ALL CLAIMS ............................................... 7
    2.01 **Treatment of Claims** ................................................................................. 7
    2.02 **Allowed Claims** .......................................................................................... 7
    2.03 **Amount of Claims** ...................................................................................... 7
    2.04 Allowance of Post-Petition Interest, Fees and Costs .................................... 7
    2.05 Filing of Claims Arising From Rejection of Unexpired Leases or Executory Contracts ... 7
    2.06 Filing of Administrative Expense Claims ..................................................... 8
    2.07 **Objections to Claims** ................................................................................. 8
    2.08 **Estimation of Claims** ................................................................................. 8
    2.09 **No Distributions Pending Allowance** ....................................................... 8
    2.10 **Payment Dates for Claims** ......................................................................... 8
    2.11 **Purchased Claims** ...................................................................................... 8
    2.12 **Section 1111(b) Election** ............................................................................ 8
    2.13 Restriction on Pursuit of Claims Against Certain Co-Debtors on Obligations of the Debtors ......................................................................................................... 9
ARTICLE III - CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS; IDENTIFICATION OF IMPAIRED CLASSES .................................................................................................. 9
    3.01 **Creation of Classes; Impairment** ............................................................. 9
    3.02 **Elimination of Classes** .............................................................................. 10
    3.03 **Impairment Controversies** ........................................................................ 10
ARTICLE IV - CLASSIFICATION AND TREATMENT OF CLASSES UNDER THE PLAN .................. 11
    4.01 Class 1—Allowed Administrative Expense Claims ..................................... 11
    4.02 Class 2—Priority Claims of Employee ........................................................ 11
    4.03 **Class 3—Priority Tax Claims** ................................................................... 12
    4.04 Class 4—Secured Claims of Ad Valorem Taxing Authorities ...................... 12
    4.05 **Class 5—Secured Claim of b1BANK** ....................................................... 12
    4.06 **Class 6—Secured Claim of Oso Reserves** ................................................ 13
    4.07 Class 7—Secured Claim of Gibsland Bank & Trust .................................... 17
    4.08 **Class 8—Secured Claim of** Cantex International dba TSI .......................... 17
    4.09 **Class 9—Secured Claim of KB Wellbore** ................................................ 18
    4.10 **Class 10—Secured Claim of Trionz, LLC** ............................................... 18
    4.11 Class 11—Secured Claim of Spin Capital, LLC .......................................... 18
    4.12 Class 12—Secured Claims of Merchant Cash Advance Parties/No Claim Filed ............. 19
    4.13 Class 13—Secured Claims of Goat Advance, LLC and Reserve Capital Management, LLC ............................................................................................... 19
    4.14 Class 14—Unsecured Claims of Creditors with Claims of $10,000.00 or Less or Which Elect to Reduce their Claims to $10,000.00 ................................. 20
    4.15 Class 15—Unsecured Claims of Creditors with Claims of $10,000.01 or More ............ 20
    4.16 **Class 16—Claims for Indemnity** ............................................................... 20

4.17 **Class 17—Equity Interests** ..................................................................................... 21

**ARTICLE V - ASSUMPTION AND REJECTION OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS** ................................................................................................................. 22

5.01 Assumption/Rejection of Executory Contracts and Unexpired Leases ........................... 22

5.02 **Reservation of Rights** ............................................................................................ 22

5.03 Disputes as to Executory/Unexpired Status ............................................................... 22

5.04 **Expired Contracts or Leases** ................................................................................. 22

5.05 **Bar Date for Claims Based on Rejection** ............................................................... 23

5.06 Limitation on Claims Based on Rejection ................................................................... 23

5.07 Claims Arising from Assumption or Rejection ............................................................ 23

5.08 **Cure of Defaults Upon Assumption** ...................................................................... 23

**ARTICLE VI - PROVISIONS FOR THE RETENTION, ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR AND THE ESTATE INCLUDING PREFERENCES AND CONVEYANCES** ....................................................................... 24

6.01 **Avoidance Actions** ............................................................................................... 24

6.02 **Debtor's Other Causes of Action** ......................................................................... 24

6.03 **Claims and Potential Claims** ................................................................................ 25

**ARTICLE VII - POST CONFIRMATION OWNERSHIP AND MANAGEMENT** ............................. 25

7.01. **Post-Confirmation Ownership** ............................................................................. 25

**ARTICLE VIII - MEANS FOR IMPLEMENTATION OF PLAN** .................................................. 25

8.01 **Implementation of the Plan** .................................................................................. 25

**ARTICLE IX - ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS** ............................................. 26

9.01 **Classes Entitled to Vote** ....................................................................................... 26

9.02 **Class Acceptance Requirement** ............................................................................. 26

9.03 **One Vote Per Holder** ........................................................................................... 26

9.04 **Cramdown** ........................................................................................................... 26

**ARTICLE X - EFFECT OF CONFIRMATION** ........................................................................ 26

10.01 .......................................................................................................... **Discharge** ............................................................................................................................ 26

10.02 .................................................................. Status of Property of the Estate After Confirmation ............................................................................................................................ 26

10.03 ............................................................................................. **Binding Nature of Plan** ............................................................................................................................ 26

10.04 .......................................................................................... **Permanent Injunction** ............................................................................................................................ 26

**ARTICLE XI - PROVISIONS GOVERNING DISTRIBUTIONS** ................................................. 27

11.01 .................................................................................... **Payment/Delivery Agents** ............................................................................................................................ 27

11.02 ............................................................................................. **Date of Distributions** ............................................................................................................................ 27

11.03 ........................................................................................................ **Cash Payment** ............................................................................................................................ 27

11.04 .................................................................................... **Delivery of Distributions** ............................................................................................................................ 27

11.05 ............................................................................. **Time Bar to Cash Payments** ............................................................................................................................ 27

11.06 ......................................................................... Effect of Pre-Confirmation Distributions

.................................................................................................................... 27
11.07 ................................................................................................................ **Prepayment**
.................................................................................................................... 27
**ARTICLE XII - POST-CONFIRMATION PROCEDURE** ......................................................... 28
12.01 ............................................................................... **Conditions Precedent to Effectiveness**
.................................................................................................................... 28
12.02 ....................................................................... **Compliance with All Applicable Laws**
.................................................................................................................... 28
12.03 ............................................................................................... **U.S. Trustees Matters**
.................................................................................................................... 28
12.04 ................................................................................... **Application for Final Decree**
.................................................................................................................... 28
**ARTICLE XIII - MODIFICATION OF PLAN** .................................................................... 28
**ARTICLE XIV - RETENTION OF JURISDICTION** ............................................................ 29
14.01 ........................................................................................... **Allowance of Claims**
.................................................................................................................... 29
14.02 ..................................... Proceedings Related to Executory Contracts and Unexpired Leases.
.................................................................................................................... 29
14.03 ........................................................................................... **Plan Interpretation**
.................................................................................................................... 29
14.04 .......................................................................................... **Plan Implementation**
.................................................................................................................... 29
14.05 ............................................................................................... **Plan Modification**
.................................................................................................................... 29
14.06 .................................................................................... **Adjudication of Controversies**
.................................................................................................................... 29
14.07 ................................................................................................. **Injunctive Relief**
.................................................................................................................... 29
14.08 .............................................................................................. **Interpleader Action**
.................................................................................................................... 29
14.09 ............................................................................................. **Correct Minor Defects**
.................................................................................................................... 29
14.10 ....................................................................................... **Authorization of Fees and Expense**
.................................................................................................................... 30
14.11 ............................................................ Post-Confirmation Orders Regarding Confirmation
.................................................................................................................... 30
14.12 ................................................................................................... **Final Decree**
.................................................................................................................... 30
**ARTICLE XV - DEFAULT AND OTHER RELATED PROVISIONS** ....................................... 30
**ARTICLE XVI - MISCELLANEOUS PROVISIONS** .......................................................... 31
16.01 .................................................... Request for Relief Under 11 U.S.C. § 1129(b)
.................................................................................................................... 31
16.02 .......................................................................................................... **Revocation**
.................................................................................................................... 31
16.03 ...................................................................... **Effect of Withdrawal or Revocation**
.................................................................................................................... 31
16.04 .................................................................... **Due Authorization by Creditors.**
.................................................................................................................... 31

16.05 ............................................................................................................**Entire Agreement** .............................................................................................................................................. 31

16.06 ........................................................................................................ **Section 1606 Exemption** .............................................................................................................................................. 31

16.07 ......................................................................................................................... **Governing Law** .............................................................................................................................................. 32

16.08 ............................................................................................................... **Post-Confirmation Noticing** .............................................................................................................................................. 32

16.09 ................................................................. Prohibition Against Discriminatory Treatment of the Debtor .............................................................................................................................................. 32

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| JET OILFIELD SERVICES, LLC | § | Case No. 22-70126-tmd |
| Debtor | § | |
| | § | |
| | § | |

## DEBTOR'S AMENDED PLAN OF REORGANIZATION
## DATED AUGUST 28, 2023

### ARTICLE I
### DEFINITION AND USE OF TERMS

1.01    **Defined Terms.**  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

1.01.01    **Administrative Expense Claim** means any right to payment constituting a cost or expense of administration of the Cases of the kind specified in 11 USC § 503(b) and entitled to priority pursuant to 11 USC §§ 507(a)(2) or 507(b), including (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the businesses of the Debtor; (ii) Fee Claims; (iii) all fees and charges assessed against the Estate pursuant to 28 U.S.C. §§ 1911-1930 or the Fed Rules of Bankruptcy Procedure; and (iv) all obligations designated as Administrative Expense Claims pursuant to an order of the Bankruptcy Court.

1.01.02    **Administrative Expense Claims Bar Date** means, for any Administrative Claim except with respect to Administrative Tax Claims, the date which is twenty-eight (28) days after the Confirmation Date or such earlier deadline that has been or may be set by order of the Bankruptcy Court for filing a request for allowance of such Administrative Claim and Fee Claims.

1.01.03    **Administrative Tax Claim** means a Claim by a governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

1.01.04    **Ad Valorem Tax Claim** means the amount due by the Debtor for personal or real property taxes at the time the case was filed.

1.01.05     **Affiliates** of a natural person refers to and includes his or her employees, agents, attorneys, legal representatives, spouse or partner, heirs, executors, and administrators, and their permitted successors and assigns. "Affiliates" of an entity refers to and includes its past and present parents, subsidiaries and affiliates, and their respective past and present officers, directors, shareholders, partners, agents, employees, attorneys and legal representatives, and their respective predecessors, heirs, executors, and administrators, and their permitted successors and assigns.

1.01.06     **Allowed** means when used with respect to a Claim or Equity Interest:  (i) a Claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent or unliquidated that has not been superseded by a filed Proof of Claim and as to which the Debtor, Trustee, or any other party in interest has not filed an objection on or before twenty-eight (28) days after the Confirmation Date (unless such date is extended, for cause, by the Bankruptcy Court upon request of the Trustee); (ii) (A) any Claim (or portion thereof) that is set forth in a timely filed Proof of Claim or Interest as to which no action to dispute, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter priority thereof, has been filed within the earlier of the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or order of the Bankruptcy Court; (B) is otherwise consented to be deemed allowed by the Debtor or Reorganized Debtor or agreed to by the Debtor or Reorganized Debtor in writing as an "Allowed" claim; or (C) for which an Order, which is final and non-appealable, is entered by the Court allowing such Claim or Equity Interest.

1.01.07     **Allowed Priority Tax Claim** means Allowed Claims under 11 U.S.C. § 507(a)(8).

1.01.08     **Allowed Priority Non-Tax Claim** means Allowed Claims under section 11 U.S.C. §§ 507(a)(1) through (7).

1.01.09     **Allowed Secured Claim** means an Allowed Claim secured by a lien, security interest or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.01.10     **Ballot** means the document approved by the Bankruptcy Court for voting on the Plan and for holders of Classes of Impaired Claims to elect acceptance or rejection of the Plan in accordance with the Plan and any voting instructions approved by the Bankruptcy Court.

1.01.11     **Bankruptcy Code** or **Code** means the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

1.01.12     **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Texas, or such other Court that may have jurisdiction with respect to Debtors' chapter 11 cases, including the United States District Court for the Western District of Texas to the extent reference of the chapter 11 case is withdrawn.

1.01.13     **Bankruptcy Rules** or Fed.R.Bankr.P. means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court of the Western District of Texas, as may be applicable to the Debtors'

2

Chapter 11 cases.

1.01.14 **Bar Date** means February 8, 2023, the date established by the Bankruptcy Court in this case for non-governmental to file a proof of claim or proof of interest with the Bankruptcy Court.

1.01.15 **Business Day** means any date except Saturday, Sunday any "legal holiday" as defined in Fed.R.Bankr.P. 9006(a) or any other days on which commercial banks in Austin, Texas are authorized by law to be closed for business.

1.01.16 **Case** means Case No. 22-70126, Jet Oilfield Services, LLC.

1.01.17 **Claim** means (i) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; (ii) any right to an equitable remedy for breach of performance of such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; or (iii) rights, demands, debts, liabilities, controversies, and causes of action of any and every character, whether known or unknown, asserted or unasserted, liquidated or unliquidated, accrued or unaccrued, mature or unmatured, at law or in equity, whether originally possessed or owned or acquired by contractual or legal assignment or subrogation, whether in contract, in tort, or under statute, regulation or other law or legal principle or theory, including without limitation Claims for economic loss, lost profits, loss of capital, emotional distress, mental anguish, personal injuries, injury or damage to tangible or intangible personal property or to real property, and all other claims for actual, consequential, special or punitive damages in the present or in the future, arising at any time from the beginning of time through and including the Petition Date.

1.01.18 **Claimant** means any person or entity having or asserting a Claim in this Case.

1.01.19 **Class** or **Classes** mean all of the holders of Claims or Equity Interests that the Trustee has designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics as described in Article IV of this Plan.

1.01.20 **Confirmation Date** means the date on which the Bankruptcy Court enters an Order confirming the Debtor's Plan.

1.01.21 **Confirmation Order** means the order confirming the Plan pursuant to 11 U.S.C. § 1129.

1.01.23 **Contested** when used with respect to a Claim means a Claim against the Debtor that is not an Allowed Claim.

1.01.24 **Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Code.

3

1.01.25 **Debtor or Reorganized Debtor** means Jet Oilfield Services, LLC.

1.01.26 **Disclosure Statement** means the Disclosure Statement prepared by the Debtor relating to its Chapter 11 case, as it may be amended, modified or supplemented from time to time in accordance with the Code and Bankruptcy Rules.

1.01.27 **Disputed Claim** means any Claim as to which the Trustee or any other party in interest has interposed a timely objection or request for estimation in accordance with the Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by Final Order.

1.01.28 **Effective Date** means the first Business Day of the first full month after the Order confirming this Plan becomes a Final Order.

1.01.29 **Estate** means the legal entity created to administer the property of the Debtor by the commencement of the Chapter 11 Case pursuant to 11 U.S.C. § 541 with respect to the Debtor.

1.01.30 **Fee Claim** means a Claim under 11 U.S.C. §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Case.

1.01.31 **Filed** means delivered to the Clerk of the Bankruptcy Court.

1.01.32 **Final Order** means an order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties as to which the time to appeal has expired or, if an appeal has been timely filed as to which a stay pending appeal has not been granted.

1.01.34 **General Unsecured Claim** means a Claim that does not have the benefit of Collateral to secure its repayment and is not entitled to priority under 11 U.S.C. § 507(a).

1.01.35 **Impaired** means the treatment of an Allowed Claim pursuant to the Plan *unless,* with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which the holder of such Claim is entitled or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Trustee (i) cures any default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2), (ii) reinstates the maturity of such Claim as such maturity existed before such default, (iii) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (c) the Plan provides that on the Effective Date the holder of such claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

1.01.36 **Lien** shall mean a contractual or statutory lien that has been perfected in an interest of the Debtor in real or personal property.

1.01.37 **Oversecured Claim** means a Secured Claim which is secured by property which is valued at an amount greater than the amount of the Secured Claim. An Oversecured Claim shall be entitled to receive post-petition interest at the non-default contract rate and may also receive post-petition fees and costs if authorized by a contract or loan document.

1.01.38 **Person** means an individual, partnership, or corporation, but does not include a governmental unit unless the government unit acquires an asset as a result of operation of a loan guarantee agreement or as receiver or liquidating agent, in which case such governmental unit shall be considered a person for purposes of 11 U.S.C. § 1102.

1.01.39 **Petition Date** means October 12, 2022, the date on which the Debtor filed its petition for relief in this Case under the Bankruptcy Code.

1.01.40 **Plan** means the Plan of Reorganization filed on February 9, 2023, as it may be amended, modified, or supplemented by the Debtor from time to time thereafter as permitted herein and by the Bankruptcy Court.

1.01.41 **Plan Proponent** means the Debtor.

1.01.42 **Pre-Petition** means prior to the Petition Date.

1.01.43 **Priority Creditor** means a Creditor whose Claim is entitled to Priority under 11 U.S.C. § 507.

1.01.44 **Priority Non-Tax Claim** means a Claim arising under 11 U.S.C. §§ 507(a)(1) through (7).

1.01.45 **Priority Tax Claim** means a Claim arising under 11 U.S.C. § 507(a)(8).

101.46 **Proof of Claim** means a Claim filed by a creditor or equity holder in this case pursuant to Fed.R.Bankr.P. 3001 *et seq.*

1.01.47 **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

1.01.48 **Pro-Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

1.01.49 **Rejection Claim** means any Claim arising pursuant to 11 U.S.C. § 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to 11 U.S.C. § 365 or 1123(b)(2).

5

**1.01.50**      **Reorganized Debtor** means the Debtor after the Effective Date of the Plan.

**1.01.52**      **Secured Creditor** or **Secured Claimant** means a Claimant holding an Allowed Claim secured by property of the bankruptcy estate, which Claim is equal to the lesser of (i) the Allowed amount of such Claim, or (ii) the value of the Collateral.

**1.01.53**      **Secured Claim** means a Claim secured by a lien, security interest or other charge or interest in property in which the Debtor has an interest to the extent of the value of the property as determined in accordance with 11 U.S.C. § 506(a).

**1.01.54**      **Substantial Consummation** means the first date that distributions of money or property to creditors contemplated under the Plan begun. Substantial Consummation shall not require that all or substantially all distributions under the Plan be completed but merely that those distributions commence.

**1.01.55**      **Voidable Transfer** means all transfers voidable under 11 U.S.C. §§ 544, 545, 547, 548, 549 and/or 550 or any other state or federal law permitting the avoidance of transfers of property.

**1.02**    **Number and Gender of Words.** Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include both genders where appropriate.

**1.03**    **Terms Defined in the Bankruptcy Code.** Capitalized terms not specifically defined in Section 1.01, *supra,* shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

**1.04**    **Headings**. The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**1.05**    **Interpretation.** Unless otherwise specified, all section, article, and schedule references in this Plan are to the respective section in, article of, or schedule to this Plan, as the same may be amended, waived, or modified from time to time. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**1.06**    **Time Computation**. In computing any time prescribed herein the provision of Fed.R.Bankr.P. 9006(a) shall apply.

6

ARTICLE II
PROVISIONS APPLICABLE TO ALL CLAIMS

## PARAGRAPH 2.13 LIMITS THE ABILITY OF CREDITORS TO PURSUE CLAIMS AGAINST THOSE INDIVIDUALS WHO WILL CONTINUE TO SERVE AS MEMBERS AND MANAGERS OF THE REORGANIZED DEBTOR.

2.01 **Treatment of Claims.** This Plan is intended to treat and resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a) as more specifically provided, *inter alia,* in Article IV of the Plan. Only Allowed Claims will be entitled to a distribution under the Plan. The Plan is designed to ensure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to chapter 7 of the Bankruptcy Code

2.02 **Allowed Claims**. To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

2.03 **Amount of Claims**. If the Debtor has scheduled a Claim and has not indicated that such Claim is disputed, contingent, or unliquidated and no objection is subsequently filed then the amount scheduled by the Debtor shall control unless the Creditor files a Proof of Claim in a different amount. If a Creditor files a Proof of Claim, then the amount stated in the Proof of Claim shall control unless the Debtor or a party in interest, as the case may be, files an objection to the Proof of Claim. If an objection to a Claim is filed, then the amount determined by the Court in a Final Order shall control.

2.04 **Allowance of Post-Petition Interest, Fees and Costs**. Unless otherwise provided in this Plan or the Bankruptcy Code, a Claim shall not be entitled to post-petition interest, fees or costs. The Debtor shall not be required to make specific objection to proofs of claim that allege a right to recover post-petition interest, penalties, fees and other accruals with respect to prepetition claims which are prohibited under 11 U.S.C. § 502, and any claim amounts attributable to such post-petition interest, penalties, fees and other accruals shall be disallowed in full upon entry of the Confirmation Order. Notwithstanding the foregoing, an Oversecured Claim shall be entitled to interest at the non-default contract or statutory rate from the date of the Petition until the date the Debtor/Reorganized Debtor is prepared to pay the Oversecured Claim in full. An Oversecured Claim arising under a contract shall be entitled to post-petition fees and costs if the contract so provides and if an application for allowance of post-petition fees and costs is timely filed and approved by the Court by a Final Order. (A Claim may be determined to be an Oversecured Claim if so designated by the Plan or if determined by the Court by a Final Order.) Any requests for allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed within twenty-eight (28) days after the Confirmation Date or shall be barred.

2.05 **Filing of Claims Arising From Rejection of Unexpired Leases or Executory Contracts**. Any Claims arising from the rejection of unexpired leases or executory contracts shall

be filed by the date specified in the order rejecting such lease or contract. If no date is specified, the date for filing a rejection claim shall be twenty-eight (28) days after service of any order approving the rejection of a lease or other executory contract as per any Bankruptcy Court's Order.

2.06 **Filing of Administrative Expense Claims**. Except as exempted by the Bankruptcy Code, any requests for allowance of Administrative Expense Claims (including Fee Claims) which are not specifically listed as undisputed or are listed without an amount and any requests for payment of Fee Claims shall be filed within twenty-eight (28) days after the Effective Date or shall otherwise be barred.

2.07 **Objections to Claims.** Any party in interest may object to the allowance of a Claim that is not allowed in this Plan. Objections to the allowance of a Pre-Petition Claim must be made prior to twenty-eight (28) days after the Confirmation Date or twenty-eight (28) days after a Post-Petition, claim is filed, *provided, however*, that this period of time for the Debtor only may be extended by Order of the Bankruptcy Court without notice or a hearing. Additionally, the Debtor may object to any claim or move to intervene in any claim objection filed by the other if the particular Claim and the objection thereto will impact the classes for which the other is responsible for payment. Except as otherwise provided herein, any Proof of Claim filed after the bar date(s) set by the Court shall be of no force and effect and shall be deemed disallowed. Subject to the preceding sentences in this section, all Disputed Claims shall be litigated to Final Order by the objecting party and any settlement of a Disputed Claim will require approval of the Bankruptcy Court. With respect to Administrative Tax Expenses and Priority Tax Claims, the deadline for objections to claims shall not be extended after 28 days after the Confirmation Date or the date upon which such claim is filed whichever is later without (a) the consent of the respective claimant or (b) providing an opportunity for priority tax claimants to be heard on a non-expedited basis. The Debtor shall not object to the claims of B & D Flowback, LLC and Moab Energy Limited Liability Company as presently filed.

2.08 **Estimation of Claims.** Upon timely motion made pursuant to Fed.R.Bankr.P. 3018, the Court shall estimate the amount of any Disputed Claim for the purposes of determining feasibility or any other issue relevant to confirmation of the Plan.

2.09 **No Distributions Pending Allowance**. Disputed Claims shall not receive distributions until such time as the claim becomes an Allowed Claim.

2.10 **Payment Dates for Claims**. Unless otherwise specified, all payments under the Plan to be paid by the Debtor on the Effective Date or with respect to Claims allowed by a Court order shall be paid on the date which is at least fourteen (14) days after any such order is final.

2.11 **Purchased Claims**. Subject to complying with applicable laws and rules of procedure, the classification of any Claim purchased by any Person shall not change the classification of such Claim.

2.12 **Section 1111(b) Election.** Any election under Section 1111(b) shall be made in writing and shall be filed with the Court by the date of the hearing on Debtor's Disclosure Statement. Debtor reserves the right to object to any Section 1111(b) election by a creditor whose collateral is of inconsequential value. In the event that a creditor makes a Section 1111(b) election

8

which is not objected to, the Debtor shall continue to make the payments provided for in the specific class applicable to the creditor until such time as the total payments made equal the Allowed Claim of the creditor without post-petition interest, fees or costs.  In the event that the creditor makes a Section 1111(b) election, its claim shall be deemed to be fully secured and the creditor shall not have an unsecured claim.

2.13    **Restriction on Pursuit of Claims Against Certain Co-Debtors on Obligations of the Debtors.**

*To the extent that any of the persons serving as Members or Managers of the Reorganized Debtor are jointly liable with the Debtor upon a Claim, whether by contract or by operation of law, such obligation shall remain in force with respect to the Claim as modified by this Plan but not otherwise.  (To the extent that a Claim is classified in more than one class, the liability of the third party shall extend to the obligations under each applicable class.)  All guarantees and other obligations shall be deemed modified to reflect the restructuring of the primary obligations under this Plan.  If the Plan is confirmed, a creditor may not enforce liability under a guaranty or other third party claim unless the Debtor defaults under the Plan. In the event of default, only the amount owing under the Plan shall be recovered from the third party.  This provision is intended to apply even to creditors who had previously recovered judgments against the guarantor.  The statute of limitations for pursuit of any claims against the applicable third party shall be tolled while this provision remains in effect.  For the avoidance of doubt, this provision applies to Lorne Moseley, Thomas Smith and Brandon Wilkins. This provision shall NOT apply to Brian T. Owen. Further, and notwithstanding anything in the Plan to the contrary, no obligation owed by Brian Owen under any guaranty is affected, impacted or impaired by anything in this Plan. Such guaranties remain in full force and effect, without defense, offset or counterclaim, notwithstanding anything in this Plan to the contrary.  However, with respect to Priority Tax Claims owed to the Louisiana Department of Revenue, this restriction against third parties shall not apply with respect to the modification of the obligation as to such third party.  Such obligations shall remain fully enforceable as to such third parties as permitted by Louisiana law and shall not be modified by this plan.  Irrespective of same, such third parties shall not be pursued unless a non-curable Event of Default has occurred or until the plan is completed by the debtor and only the balance unpaid by plan distributions, with applicable interest and penalties, shall be collected from such third parties and the statute of limitations with respect to such claims against such third parties shall be tolled.  The injunction contained herein shall expire and terminate seventy-two (72) months after the Effective Date.*

### ARTICLE III
### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS;
### IDENTIFICATION OF IMPAIRED CLASSES

3.01    **Creation of Classes; Impairment**.  The Debtor creates the following classes for purposes of organization only with respect to Administrative Claims and Priority Claims; and for purposes of organization, voting, and all confirmation matters with respect to other Claims and Equity Interests in the Debtor as follows:

| Class 1 | Allowed Administrative Claims |
| Class 2 | Priority Claims of Employees |
| Class 3 | Priority Tax Claims |
| Class 4 | Secured Claims of Ad Valorem Taxing Authorities |
| Class 5 | Secured Claim of b1BANK |
| Class 6 | Secured Claim of OSO Reserves |
| Class 7 | Secured Claim of Gibsland Bank & Trust |
| Class 8 | Secured Claim of Cantex International dba TSI |
| Class 9 | Secured Claim of KB Wellbore |
| Class 10 | Secured Claim of Trionz, LLC |
| Class 11 | Secured Claim of Spin Capital, LLC |
| Class 12 | Secured Claims of Merchant Cash Advance Parties/No Claim Filed |
| Class 13 | Secured Claims of Goat Advance, LLC and Reserve Capital, LLC. |
| Class 14 | Unsecured Claims of Creditors With Claims of $10,000 or Less or Which Elect to reduce Their Claims to $10,000 |
| Class 15 | Unsecured Claims of Creditors With Claims of $10,000.01 Or More |
| Class 16 | Claims for Indemnity |
| Class 17 | Equity Interests |

***Of the foregoing, Classes 4-16 are impaired; all other classes are not impaired under this Plan.***

3.02 **Elimination of Classes**. Any class that is not occupied as of the date of the hearing on confirmation of this Plan by an Allowed Claim or a claim temporarily allowed pursuant to Fed.R.Bankr.P. 3018 shall be deemed deleted from this Plan for purpose of voting on acceptance or rejection of this Plan and for the purpose of determining whether this Plan has been accepted by such class pursuant to 11 U.S.C. § 1129.

3.03 **Impairment Controversies**. If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or class of Equity Interests, is impaired under this Plan, such class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Equity Interest under this Plan.

## ARTICLE IV
## CLASSIFICATION AND
## TREATMENT OF CLASSES UNDER THE PLAN

4.01   **Class 1—Allowed Administrative Expense Claims.[1]**

(a)   Class 1 consists of all Administrative Expense Claims (including, but not limited to, those arising under 11 U.S.C. § 503(b)(9)).

(b)   Unless otherwise agreed or as set forth herein as a result of a prior agreement, each holder of an Allowed Administrative Expense Claim shall be paid the amount of its Allowed Administrative Expense Claim on the later of the Effective Date or within seven (7) days after the date that a Final Order is entered approving the Administrative Expense Claim, unless otherwise agreed to by and between the Debtor and the holder of such claim.

(c)   No Administrative Expense claims, except for the U.S. Trustee's Fees and Administrative Tax Expense Claims (allowable pursuant to 11 U.S.C. 503(b)(1)(B)-(C) and entitled to priority pursuant to 11 U.S.C. 507(a)(2)) without a request for payment pursuant to 11 U.S.C. 503(b)(1)(D)), shall be paid except as approved by Court Order. Proofs of claim asserting Administrative Expense Claims, even if not objected to, shall not be sufficient to constitute approval of an Administrative Expense Claim. Administrative Tax Expenses owed to the Louisiana Department of Revenue which are not paid in full on the Effective Date of the Plan shall be entitled to post-effective date interest and penalties pursuant to 11 U.S.C. 1129(a)(9)(A) at the rate required by applicable non-bankruptcy law pursuant to 11 U.S.C. §511.

(d)   Allowed Fee Claims incurred through confirmation of professionals retained by the Debtor and of the Debtor will be paid upon entry of an Order by the Bankruptcy Court approving same with such fees to be paid on the later of the Effective Date or within seven (7) days after entry of a Final Order approving said Claims, unless the parties agree to a later date. After the Confirmation Date, the Debtor and his professionals may estimate fees necessary to complete these cases through the entry of a Final Decree.

(e)   Claims for United States Trustee's fees will be paid by the Debtor as they come due, both before and after the Effective Date.

4.02   **Class 2—Priority Claims of Employees.**

(a)   Class 2 consists of Priority Claims of Employees under 11 U.S.C. § 507(a)(4).

(b)   Class 2 creditors shall receive payment of the amount of their Allowed Claims on the Effective Date unless the creditor agrees otherwise.

---

[1] While administrative and priority claims are usually not "classified", the proponent of the Plan has done so in this case for ease of reference; the "classification" of these claims does not alter the statutory rights of such claimants under the Bankruptcy Code.

11

(c)      Class 2 is not impaired.

**4.03    Class 3—Priority Tax Claims**

(a) Class 3 consists of Priority Tax Claims under 11 U.S.C. § 507(a)(8).

(b)   Class 3 creditors shall receive payment of the amount of their Allowed Claims, including interest at the rate required by applicable non-bankruptcy law commencing on the Effective Date of the Plan, in equal installments over a period beginning on the Effective Date with the final payment due on the date which is not later than five years from the Petition Date. In the event a Class 3 claim (a Priority Tax Claim) is not an Allowed Claim on the Effective Date, such equal payment shall commence (i) not sooner than seven days after the claim becomes an Allowed Claim and (ii) not later than thirty days after the claim becomes an Allowed Claim, and such Class 3 claim shall be paid in full not later than five years from the Petition Date.Class 3 is not impaired.

**4.04    Class 4—Secured Claims of Ad Valorem Taxing Authorities**

(a) Class 4 consists of the Secured Claims of Ad Valorem Taxing Authorities.

(b) For purposes of voting, all ad valorem taxes within a single county shall consist of a separate subclass.

(c) Any ad valorem tax claims for tax years through 2022 shall retain their liens and shall be paid in thirty-six equal monthly installments including interest at the applicable statutory rate.

(d) Ad valorem taxes that have arisen Post-Petition have been and will continue to be paid as they come due.

(e) Class 4 is impaired.

**4.05    Class 5—Secured Claim of b1BANK**

(a)      Class 5 consists of the finally Allowed Secured Claim of b1BANK. This Allowed Secured Claim and the security interests and prepetition and postpetition liens securing the same are more fully described in proof of claim 4-1 filed by b1BANK in the Case, including the attachments thereto ("b1BANK POC"), and in the *Stipulations and Agreed Final Cash Collateral Order on Debtor's Motion for Use of Cash Collateral (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, and (C) Modifying the Automatic Stay [Docket No. 86] (the "Final CC Order")*. As more fully described in the b1BANK POC, b1BANK's finally Allowed Secured Claim is in the principal amount of $1,099,040.43, plus postpetition interest allowed by 11 U.S.C. § 506(b) (the "b1Bank Principal and Interest Claim") and reasonable attorneys' fees and costs\expenses, which the Debtor agrees to fix at $125,000.00 (the "b1BANK Attorney Fee Claim").

(b)      The b1BANK Allowed Secured Claim is an Oversecured Claim.

(c)     Regarding postpetion interest, notwithstanding any other provisions in the Plan, including section 2.04 of the Plan, without any further application to or order from the Bankruptcy Court, pursuant to 11 U.S.C. § 506(b), and per the Debtor's stipulation and the Final CC Order, b1BANK shall be entitled to post-petition interest at the rate of 7.25 % per annum through the Effective Date of the Plan less adequate protection payments made to date.

(d)     Debtor's agreement to fix the amount of the b1Bank Attorney Fee Claim at $125,000.00 is contingent upon (i) b1BANK withdrawing its objection to confirmation of the Plan and (ii) b1BANK not applying for any additional attorneys' fees or expenses\costs under section 2.04 of the Plan. If b1BANK shall fail to comply with either of these conditions, b1BANK may submit an application to the Bankruptcy Court for allowance of its reasonable attorneys' fees and costs\expenses under 11 U.S.C. § 506(b). Notwithstanding any other provisions in the Plan, including section 2.04 of the Plan, b1BANK shall not be required to submit an application for allowance of its reasonable attorneys' fees and costs\expenses, which amount shall be fixed in the amount of $125,000.00, so long as b1BANK (i) withdraws its objection to confirmation of the Plan and (ii) does not submit an application for additional attorneys' fees or expenses\costs from the Debtor under section 2.04 of the Plan.

(e)     The b1Bank Principal and Interest Claim and the b1Bank Attorney Fee Claim will be paid in full on the Effective Date.

(f)     b1Bank shall retain its liens against the Debtor's property until the b1BANK Principal and Interest Claim and b1Bank Attorney Fee Claim are paid in full as provided herein. Notwithstanding anything to the contrary contained in the Plan, any order confirming the Plan, any document executed pursuant to the Plan, or any document otherwise incorporated into the Plan, nothing in the Plan, any order confirming the Plan, any document executed pursuant to the Plan, or any document otherwise incorporated into the Plan shall grant or be construed to grant OSO Reserves, LLC, any lien superior to the liens of b1BANK described in para. 4.05 of this Plan, unless or until the b1BANK Principal and Interest Claim and the b1BANK Attorney Fee Claim are paid in full as provided herein.

(g)     This Section 4.05 of the Plan exclusively governs treatment of Class 5 addressing the Secured Claim of b1BANK, notwithstanding any terms which may be construed as contradictory thereto contained in the Plan, any order confirming the Plan, any document executed pursuant to the Plan, or any document otherwise incorporated into the Plan, including any components of the Settlement Agreement entered into by and between Jet Oilfield Services, Thomas Smith, Lorne Mosley, and Brandon Wilkins, one one hand and Oso Reserves, LLC, on the other hand, or any exhibits thereto, which may be incorporated into the Plan.

(h)     Class 5 is impaired.

4.06    **Class 6—Secured Claim of Oso Reserves**

Class 6 is comprised of the secured lien claims held by OSO Reserves, LLC ("OSO") in accordance with the documents that govern the debtor-creditor relationship between OSO and the Debtor, including, without limitation, the following:

> That certain Accounts Receivable Purchase and Sale Agreement dated June 25, 2020, and all related documents, including schedules and invoices (collectively, the "AR PSA ");

> *Stipulations and Agreed Final Cash Collateral Order on Debtor's Motion for Use of Cash Collateral (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, and (C) Modifying the Automatic Stay [Docket No. 86]* (the "Final CC Order");

> That certain Guaranty executed by Brian Owen ("Owen") in OSO's favor (the "Continuing Guaranty"); and

> The Settlement Agreement (the "Agreement") entered into by and between Jet Oilfield Services, LLC (the "Debtor" or "Jet"), Thomas Smith, Lorne Mosley, and Brandon Wilkins, on one hand, and OSO, on the other hand, and exhibits attached to the Agreement.

All such documents shall collectively constitute the "OSO Indebtedness Documents." The foregoing list of OSO Indebtedness Documents is provided for descriptive purposes only and is not meant to be a comprehensive list of all of the operative OSO Indebtedness Documents. The Debtor shall remain bound by all the OSO Indebtedness Documents regardless of whether any such OSO Indebtedness Document has been specifically named and described herein.

Notwithstanding anything to the contrary in the Plan, each OSO Indebtedness Document is hereby reinstated and ratified by the Debtor and incorporated into the Plan by reference as if set forth in full herein, except as such terms are amended by the Plan as described herein.

OSO shall have an Allowed Secured Claim for all purposes under the Plan in the principal amount of $9,599,040.43 (the "OSO Principal and Interest Claim") (a) plus $300,000 of OSO's attorney fees and expenses incurred during the chapter 11 case (the "OSO Attorney Fee Claim and together with the OSO Principal and Interest Claim, the "OSO Claim"), and (b) $90,000, consisting of an amount equivalent to funds previously set to be included in the OSO Cash Payment, which Debtor is now utilizing to pay part of the b1BANK Attorney Fee Claim, with OSO's consent ("the Additional OSO Contribution").

The OSO Principal and Interest Claim shall accrue interest at a rate of 14% per annum and shall mature on the 60th month after the Effective Date of the Plan. The OSO Attorney Fee Claim shall not accrue interest and shall mature on the 18th month after the Effective Date of the Plan.

The OSO Principal and Interest Claim shall be payable to OSO in sixty (60) equal monthly installments of $176,813.38, beginning on the 15th day of the first month following the Effective Date of the Plan and continuing on the same day of the month thereafter.

14

The OSO Attorney Fee Claim shall be payable to OSO in eighteen (18) equal monthly installments of $16,666.67, beginning thirty (30) days after the Effective Date of the Plan and continuing every thirty (30) days thereafter until the OSO Attorney Fee Claim is paid in full. The OSO Attorney Fee Claim shall not accrue interest.

The Additional OSO Contribution of $90,000 shall be paid to OSO in twenty-four (24) equal installments of $4,163.44 with the first payment being due on the 15th day of the month following the Effective Date of the Plan at the rate of 10.25%.

In addition to the above payments, the Debtor shall remit the OSO Cash Payment to OSO on the Effective Date of the Plan.

"OSO Cash Payment" means $1,810,959.57.

The OSO Claim is a secured claim, and after the b1BANK Principal and Interest Claim and b1BANK Attorney Fee Claim are paid in full, it will be a first priority secured claim with priority over all liens and security interests in all the Debtor's assets.

In addition, the OSO Claim shall not be subject to any objection, defense, claim, counterclaim, or right of setoff, and shall not be subject to any avoidance or recovery actions under Sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

The OSO Claim shall be additionally secured by all Debtor's property, including all present and future:

    (i) inventory;

    (ii) equipment (including items that are or become fixtures);

    (iii) real property;

    (iv) all patents and patent applications and the inventions and improvements described and claimed therein, including without limitation, all patents and patent applications, together with (a) all reissues, divisionals, continuations, renewals, substitutions, extensions and continuations-in-part thereof, (b) all income, royalties, damages and payments now or hereafter due or payable under and with respect thereto, including without limitation, damages and payments for past, present and future infringements thereof, (c) the right to sue for past, present and future infringements thereof, and (d) all rights corresponding, incident or relating thereto (collectively, the "Patents");

    (v) all licenses and similar agreements and covenants not to sue with respect to all Patents or any of them (other than any existing license agreements or covenants not to sue which by their terms prohibit assignment, transfer, or the grant of a security interest by Debtor or give the other party thereto the right to terminate the same upon an assignment, transfer, or grant of a security interest therein, which licenses or covenants not to sue do not in the aggregate have a material

15

adverse effect on the value or utility of the Patents or other assets of Debtor individually or as a whole), together with (a) all renewals, extensions, supplements and continuations thereof and supplements thereto, (b) income, royalties, damages and payments now or hereafter due or payable with respect thereto, including without limitation, damages and payments for past, present and future breaches thereof, (c) the right to sue for past, present and future breaches thereof, and (d) all rights corresponding, incident or relating thereto (collectively, the "Licenses");

(vi) secured by forty percent (40%) of the Equity Interests of the Debtor, which such Equity Interests shall be pledged pro rata by each of Thomas Smith, Lorne Mosley, and Brandon Wilkins (collectively, the "Pledgors") as a condition to the Effective Date of the Plan; and

(vii) be additionally secured by all proceeds and products of the foregoing, including without limitation all payments under insurance or any indemnity or warranty payable in respect of any of the foregoing.

All liens granted to OSO in this Plan, including the liens granted by each of Thomas Smith, Lorne Mosley, and Brandon Wilkins as applicable, shall be (i) of now-owned and hereafter-acquired property, (ii) valid, binding, continuing, enforceable, and unavoidable obligations and interests of the Debtor or each Pledgor or such person, as applicable, (iii) in addition to, and not in substitution of, OSO's existing liens and security interests, (iv) deemed automatically perfected without reliance on the filing of any financing statements or recordation, and OSO shall not be required to obtain security or similar agreements or corporate resolutions, file further financing statements or record any documents, or take any other steps – including possession – under applicable law to create or perfect any such liens granted pursuant to the Plan, (v) and after the b1BANK Principal and Interest Claim and b1BANK Attorney Fee Claim are paid in full, senior to all other liens, security interest, claims, and encumbrances in the same property.

Nonetheless, OSO may, but shall not be required to, file financing statements or other documents in any jurisdiction or take any other action to validate or perfect the security interests granted to it under this Plan or the Confirmation Order. If OSO, in its sole and absolute discretion, chooses to file financing statements or other documents or otherwise confirms perfection of such security interests, the Debtor and each Pledgor or person shall, at OSO's request, execute or turnover any document necessary, and such financing statements or similar documents or possession shall be deemed to have been filed or recorded and perfected on the Petition Date, *nunc pro tunc*.

If the Debtor seeks to obtain new financing, and the Debtor must first offer such financing to OSO on the same terms and conditions. If OSO declines such offer, OSO will consent (in its reasonable discretion) to subordinate its first-priority liens in only equipment and inventory subject to the provisions of the Settlement Agreement entered into by and between Jet Oilfield Services, LLC, Thomas Smith, Lorne Mosley, Brandon Wilkins and Oso Reserves, LLC (the "Oso/Debtor/Pledgor Settlement Agreement"), which is incorporated by reference in this Plan.

Notwithstanding anything to the contrary in the Plan, any order confirming the Plan, this Article, or any of the OSO Indebtedness Documents, after the b1BANK Principal and Interest Claim and b1BANK Attorney Fee Claim are paid in full, all of Oso's liens and security interests in the

16

Debtor's assets, whether pre or post-petition or granted pursuant to this Plan, will be senior to all other liens ,security interests, and encumbrances in the same property.

Except as set forth herein, the Debtor and each Pledgor, on the one hand, and OSO, on the other hand, hereby mutually releases and forever discharges each other of and from any and all claims, suits, allegations, causes of action, costs, demands, and liabilities available at common law or in equity, that in each case relate to or are otherwise in any way connected with the Debtor and its lending relationship with OSO, this Chapter 11 case, and any of the events leading up to the Chapter 11 case, from the beginning of time to immediately prior to the Effective Date, whether known or unknown, liquidated or unliquidated, fixed or contingent, asserted or unasserted, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, anticipated or unanticipated, which the Debtor, Pledgor, and OSO have, had, or claim to have had or hereafter claims to have against the other by reason of any act or omission occurring prior to the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party under the Plan, the Indebtedness Documents (as modified by the Plan), or any document, instrument, or agreement executed to implement the Plan. Furthermore, the releases set forth above shall not release claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything in the Plan to the contrary, no obligation owed by Brian Owen under any guaranty is affected, impacted or impaired by anything in the Plan. Such guaranties remain in full force and effect, without defense, offset, or counterclaim notwithstanding anything in this Plan to the contrary.

The OSO Claim is impaired under the Plan; therefore, the holders of the OSO Claim are eligible to vote on the Plan.

4.07    **Class 7—Secured Claim of Gibsland Bank & Trust**

(a)    Class 7 consists of the secured claim of Gibsland Bank & Trust ("GBT"). GBT is secured by the Debtor's real property in Minden, Louisiana.

(b)    GBT is entitled to be treated as an oversecured creditor which means that it will be entitled to recover interest at the non-default contract rate and reasonable post-petition fees and costs.

(c)    GBT shall retain its liens.

(d)    GBT shall continue to receive its regular contractual payments in the amount of $15,000.00 per month. The Note shall be fully due and payable on December 30, 2024 unless the parties mutually agree to renew it.

(e)    Any attorneys' fees and costs allowed by agreement of the parties or Court order shall be paid within 60 days after the Effective Date.

(f)    The Class 7 claim is impaired.

4.08    **Class 8—Secured Claim of** Cantex International dba TSI

17

(a) Class 8 consists of the secured claim of Cantex International dba TSI ("TSI"). TSI is secured by equipment purchased from TSI. TSI has valued the amount of its collateral at $1,000,000.00 and this amount shall constitute the Secured Claim of TSI. The remaining amount of TSI's Allowed Claim shall be a Class 14 Unsecured Claim.

(b) TSI is entitled to be treated as an undersecured creditor which means that it will be not entitled to post-petition interest or fees.

(c) TSI shall retain its liens.

(d) TSI shall receive payment of its Allowed Secured Claim in the amount of $1,000,000.00 in eighty-four (84) equal monthly installments including interest at a Market Rate of Interest. Unless the Court determines otherwise, a Market Rate of Interest will be the Wall Street Journal Prime Rate + 1.5% on a floating basis.

(e) The Class 8 claim is impaired.

4.09 **Class 9—Secured Claim of KB Wellbore**

(a) Class 9 consists of the secured claim of KB Wellbore ("KB"). KB is secured by equipment purchased from KB.

(b) KB is entitled to be treated as an oversecured creditor which means that it will be entitled to recover interest at the non-default contract rate and reasonable post-petition fees and costs.

(c) KB shall retain its liens.

(d) KB shall receive payment of its Allowed Secured Claim in eighty-four (84) equal monthly installments including interest at a Market Rate of Interest. Unless the Court determines otherwise, a Market Rate of Interest will be the Wall Street Journal Prime Rate + 1.5% on a floating basis.

(e) The Class 9 claim is impaired.

4.10 **Class 10—Secured Claim of Trionz, LLC**

(a) Class 10 consists of the secured claim of Trionz, LLC ("Trionz"). Trionz claims to be secured by certain property in its possession.

(b) The Debtor shall surrender the property held by Trionz in full satisfaction of its secured and unsecured claims.

(c) The Class 10 claim is impaired.

4.11 **Class 11—Secured Claim of Spin Capital, LLC**

(a)     Class 11 consists of the secured claim filed by Spin Capital, LLC. The Debtor disputes that it is liable upon this claim and that any claim asserted by the creditor is secured.

(b)     The Debtor has filed an adversary proceeding to determine the extent, priority and validity of the liens and claims of Spin Capital, LLC.

(c)     If the Court finds that Spin Capital, LLC holds an Allowed Secured Claim, it will retain its liens and shall receive payment of its Allowed Secured Claim over eighty-four (84) months including a Market Rate of Interest. Unless the Court finds otherwise, a Market Rate of Interest shall be the Wall Street Journal Prime Rate + 1.5% on a floating basis. If the Court finds that Spin Capital, LLC holds an Allowed Unsecured Claim, it shall receive the treatment provided to Class 15 creditors. If the Claim is denied, then Spin Capital, LLC shall receive no distribution under the Plan and its liens and claims shall be extinguished.

(d)     The Class 11 claim is impaired.

### 4.12    Class 12—Secured Claims of Merchant Cash Advance Parties/No Claim Filed

(a) Class 11 shall consist of the following Merchant Cash Advance which were scheduled by the Debtor as disputed and which did not file a timely proof of claim. Each of the creditors listed below shall be considered to be a separate class for purposes of voting:

| Sub-Class | Creditor | Scheduled Amount | Disputed? |
|---|---|---|---|
| a | BMF Capital | $2,500,000.00 | Yes |
| b | Cannon Advance | $2,999,000.00 | Yes |
| c | Premier Fund US | $3,357,900.00 | Yes |
| d | Reliance Financial | $4,512,000.00 | Yes |

(b) The Class 12 creditors shall not receive any distribution and their contracts shall be deemed fully satisfied and discharged as to all parties. To the extent that their contracts are construed to be executory contracts, they are rejected.

(c) Class 12 is impaired.

### 4.13    Class 13—Secured Claims of Goat Advance, LLC and Reserve Capital Management, LLC

(a) Class 13 shall consist of Goat Advance, LLC and Reserve Capital Management, each of which shall count as a separate subclass for purposes of voting, fall within Class 13:

| Subclass | Creditor | Scheduled Amt. | POC Amt. | Disputed? |
|---|---|---|---|---|
| a | Goat Advance, LLC | $593,800.00 | $593,750.00 | Disputed as secured |

19

| | | | | | |
|---|---|---|---|---|---|
| | b | Reserve Capital Management | $652,833.40 | $531,250.00 | Disputed as secured |

(b) The Debtor has filed an adversary proceeding against Goat Advance, LLC and Reserve Capital Management to determine the extent, priority and validity of their liens.

(c) If the claims of Goat Advance, LLC and/or Reserve Capital Management are found to be Allowed Secured Claims, such creditors shall retain their liens and receive payment of the amount of their Allowed Secured Claim over eighty-four months (84) including a Market Rate of Interest. Unless determined otherwise by the Court, a Market Rate of Interest shall be the Wall Street Journal Prime Rate + 1.5% If Goat Advance, LLC and/or Reserve Capital Management are found to have Allowed Unsecured Claims they will receive the treatment provided to Class 15.

(d) Class 13 is impaired.

**4.14 Class 14—Unsecured Claims of Creditors with Claims of $10,000.00 or Less or Which Elect to Reduce their Claims to $10,000.00**

(a) Class 14 shall consist of Allowed Unsecured Creditors with Claims of $10,000 or less or which elect to reduce their claims to $10,000.00. Any creditor in Class 14 may elect to participate in Class 15. Such election shall be noted on the creditor's ballot.

(b) Class 14 creditors shall receive a single payment equal to 25% of their Allowed Claim within 90 days after the Effective Date.

(c) Class 14 is impaired.

**4.15 Class 15—Unsecured Claims of Creditors with Claims of $10,000.01 or More**

(a) Class 15 shall consist of Allowed Claims of Unsecured Creditors with Claims of $10,000.01 or more.

(b) The Class 15 creditors shall receive payment of 100% of the amount of their Allowed Claims in 84 equal monthly installments including interest at the rate of 6.0% per annum

(c) The Class 15 creditors shall also have the right to receive distributions on funds recovered by the Unsecured Creditors' Claims Representative as discussed in Article VI of this Plan. Any amounts distributed to Class 15 creditors by the Unsecured Claims Representative shall reduce the total amount to be paid by the Debtor under this Plan but shall not decrease the monthly payments to be made by the Debtor, the intent being to accelerate the date upon which payments are completed.

(d) Class 15 is impaired.

**4.16 Class 16—Claims for Indemnity**

20

(a) Class 16 shall consist of Unsecured Claims held by Insiders entitled to indemnity from the Debtor.

(b) The Class 16 creditors shall not be entitled to payment on claims for indemnity for attorneys' fees incurred prior to the Effective Date or amounts paid pursuant to the contemporaneous settlement agreement with B & D Flowback, LLC and Moab Energy Limited Liability Company, the Class 16 creditors and the Debtor ("Moab Agreement") until after all other unsecured claims have been paid in full.

(c) The Class 16 creditors shall not receive any distribution unless and until they are required to pay any debt owed by the Debtor. Upon payment of any such debt, any Class 16 creditor shall give notice to the former counsel to the Unsecured Creditors Committee. Upon giving notice as provided herein, the Class 16 creditors shall be entitled to the same treatment as Class 15 creditors.

(d) Class 16 is impaired.

4.17 **Class 17—Equity Interests**

(a) Class 17 shall consist of the Equity Interests of the Debtor.

(b) The Class 17 Equity Interests shall be preserved and retained, except that Brian T. Owen has agreed to surrender his Equity Interest to the other members.

(c) In the event of a sale of substantially all of the assets of the Debtor, no distributions to equity or insiders shall be permitted until such time as unsecured creditors have been paid in full.

(d) Class 17 is not impaired.

### ARTICLE V
### ASSUMPTION AND REJECTION OF UNEXPIRED
### LEASES AND EXECUTORY CONTRACTS

5.01    **Assumption/Rejection of Executory Contracts and Unexpired Leases.**

**5.01.01        Contracts to be Assumed**

The Debtor shall assume the following leases and contracts:

| Counterparty | Contract | Amount necessary to cure arrearages |
|---|---|---|
| Kenney 74, LLC | Lease of Gardendale location | $0 |
| | | |
| | | |

**5.01.02        Contracts to be Rejected**

The Debtor shall reject the following leases and contracts:

| Counterparty | Contract |
|---|---|
| BES Properties, LLC | Lease of Artesia, NM Property |
| Any agreements with Merchant Cash Advance Lenders that are still executory | |
| Any executory contracts or leases not assumed or treated elsewhere | |
| | |

5.02    **Reservation of Rights.**  Pursuant to 11 U.S.C. § 365, Debtor shall have the right to assume or reject on or before the Effective Date any executory contract or unexpired lease of non-residential real property or may change the status of any lease or executory contract which has not previously been assumed or rejected to the extent permitted under the Bankruptcy Code. Any additional or changed assumptions or rejections shall be noted in the Confirmation Order.

5.03    **Disputes as to Executory/Unexpired Status**.  Notwithstanding Section 5.04, *infra,* of this Plan, if on the Effective Date there is a pending dispute filed with the Bankruptcy Court as to whether a contract is executory or a lease is unexpired, the Debtor's right to assume or reject such contract or lease shall be extended until the date that is twenty-eight (28) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.  In the event that a contract is not listed as executory in the Disclosure Statement filed in connection herewith, such contract shall be deemed not to be executory unless an objection is timely filed with the Bankruptcy Court.

5.04    **Expired Contracts or Leases.**  Any contract or lease that expired pursuant to its terms prior to the Effective Date and that has not been assumed or rejected by Final Order prior to the Effective Date or herein is hereby specifically rejected.

5.05 **Bar Date for Claims Based on Rejection.** If the rejection of an executory contract or unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable unless a proof of claim is filed with the Bankruptcy Court and served upon the Trustee and his counsel of record as follows: (a) if the Claim arises from the rejection of an executory contract or unexpired lease by operation of any provision of this Plan, twenty-eight (28) days after the Confirmation Date; (b) if the Claim arises from the rejection of any executory contract or unexpired lease pursuant to a Final Order of the Bankruptcy Court (other than the Confirmation Order) authorizing rejection of such contract or lease, twenty-eight (28) days after entry of such Final Order; or (c) if the Claim arises from the rejection of an executory contract or unexpired lease that is rejected after withdrawal of the assumption thereof pursuant to Section 5.02 of this Plan, twenty-eight (28) days after service of notice of the assumption withdrawal. The foregoing applies only to Claims arising from the rejection of an executory contract or unexpired lease not rejected prior to the Effective Date; any other Claims held by a party to a rejected contract or lease shall have been evidenced by a proof of claim filed by earlier applicable bar dates or shall be barred and unenforceable.

5.06 **Limitation on Claims Based on Rejection.** Any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with 11 U.S.C. § 502(b)(6) and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Trustee that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the of any objection to such Claim, if asserted.

5.07 **Claims Arising from Assumption or Rejection**. All Allowed Claims arising from the rejection of an executory contract or unexpired lease shall be treated as Class 14 Claims pursuant to Section 4.14 of this Plan unless otherwise ordered by Final Order of the Bankruptcy Court; and all other Allowed Claims relating to an executory contract or unexpired lease shall have such status as they may be entitled to under the Bankruptcy Code as determined by Final Order of the Bankruptcy Court.

5.08 **Cure of Defaults Upon Assumption**. Upon the assumption of any executory contract or unexpired lease pursuant to this Article V, all defaults, including, without limitation, defaults specified in 11 U.S.C. § 365(1) and any defaults specified in 11 U.S.C. § 365(b)(2), shall be deemed cured except to the extent written demand for the cure of or demonstration of ability to cure any default has been filed with the Bankruptcy Court and served upon the Debtor by the non-Debtor party to such executory contract or unexpired lease within twenty-eight (28) days after the Effective Date or an Order has previously been entered by the Court establishing the amount required to cure and the method for same. In the absence of a timely demand in accordance with the foregoing, the Reorganized Debtor's obligation to cure or demonstrate the ability to cure shall be deemed satisfied, waived, released and discharged. If any non-Debtor party to such executory contract or unexpired lease timely serves and files such written demand and the Reorganized Debtor files an objection in writing to such demand within twenty-eight (28) days thereafter, the Bankruptcy Court shall, by the issuance of a Final Order, determine the amount actually due and owing in respect of such demand or shall approve the settlement of such demand.

**ARTICLE VI**
**PROVISIONS FOR THE RETENTION, ENFORCEMENT, SETTLEMENT,**
**OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR AND THE ESTATE**
**INCLUDING PREFERENCES AND CONVEYANCES**

6.01 **Avoidance Actions.** The Debtor retains and preserves its rights to pursue any causes of action created by the Bankruptcy Code, specifically including claims created by Chapter 5 of the Bankruptcy Code. For the avoidance of doubt, the Debtor reserves the right to recover any amounts paid to the following creditors:

BMF Capital
Cannon Advance
Premier Fund US
Reliance Financial
Spin Capital

Debtor also reserves the right to challenge the validity of any claim filed by any of the parties listed above and to challenge the lien status of the above listed parties and any other party whose lien is described as disputed in this plan.

6.02 **Debtor's Other Causes of Action.** All Claims of any kind or character whatsoever in favor of the Debtor or the estate against third parties to the extent not specifically compromised and released pursuant to this Plan or in the Final CC Order, are preserved and retained by the Reorganized Debtor, whether or not included by name in the Disclosure Statement, whether currently known or unknown. Only those claims specifically compromised and released pursuant to this Plan or in the Final CC Order or any agreement referred to and incorporated herein are excluded from the foregoing. The Debtor specifically preserves and retains its right to collect any amounts which it has billed to third parties for work performed. The Debtor specifically preserves and retains the right to pursue claims for professional negligence against professionals employed by the Debtor so long as notice of the claim is furnished to the appropriate professional prior to entry of the Confirmation Order. The Debtor and OSO specifically preserve and retain their respective rights to bring claims against Brian Owen notwithstanding anything contrary in this Plan. The Debtor retains the right to seek return of any retainers paid to attorneys which exceed the amount of fees approved by the Court in this case.

6.03 **Unsecured Claims Representative.** Prior to the Effective Date of the Plan, the Unsecured Creditors' Committee shall designate an individual or firm to serve as the Unsecured Claims Representative. The Debtor shall assign to the Unsecured Claims Representative the Debtor's right to pursue any and all claims of the estate against Brian Owen ("Assigned Claims") In the event that this Plan is amended to reserve claims against any other insider of the Debtor, those claims shall be Assigned Claims as well. The Unsecured Claims Representative shall be deemed to be a representative of the Estate pursuant to 11 U.S.C. §1123(b)(3)(B). The Debtor shall pay the Unsecured Claims Representative the sum of $50,000.00 to pay for fees and expenses of the Unsecured Claims Representative in pursuing the Assigned Claims. The Unsecured Claims Representative shall have the full authority to pursue or compromise the Assigned Claims. The

Unsecured Claims Representative shall distribute any funds recovered upon the Assigned Claims less fees and expenses incurred to the Class 15 creditors. In its discretion, the Unsecured Claims Representative may distribute such funds to the Debtor to distribute.

6.04 **Claims and Potential Claims.** A list of claims presently being pursued by the Debtor and claims which the Debtor has identified that it may pursue is attached to the Disclosure Statement. The failure to specifically list any particular claim does not exclude such claims from the preservation of claims language contained in para. 6.01 and 6.02.

6.05. **Adv. No. 23-7004.** Upon consummation of the Moab Agreement, the Debtor shall dismiss Adv. No. 23-7004 with prejudice.

## ARTICLE VII
### POST CONFIRMATION OWNERSHIP AND MANAGEMENT

7.01. **Post-Confirmation Ownership.**

The members and managers of the Debtor after confirmation of the Plan shall be:
Lorne Moseley
Thomas Smith
Brandon Wilkins

Brian T. Owen shall not be a member or manager of the Reorganized Debtor.

## ARTICLE VIII
### MEANS FOR IMPLEMENTATION OF PLAN

8.01 **Implementation of the Plan.** The Plan will be implemented pursuant to 11 U.S.C. § 1123(a) by the Debtor. The Debtor shall continue to operate its business to generate revenues to pay creditors. The Debtor shall be authorized to take all actions necessary for operation of the business, including incurring credit, pursuing claims and causes of action belonging to the Estate and compromising and settling any claims or causes of action belonging to the Estate.

## ARTICLE IX
### ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

9.01     **Classes Entitled to Vote**.  Each impaired class of Claims or Equity Interests shall be entitled to vote separately to accept or reject this Plan.  Any unimpaired class of Claims shall not be entitled to vote to accept or reject this Plan.

9.02     **Class Acceptance Requirement.**  A class of Claims shall have accepted this Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (½) in number of the Allowed Claims of such class that have timely and properly voted on this Plan.

9.03     **One Vote Per Holder**.  If a holder of a Claim holds more than one Claim in any one class, all Claims of such holder in such class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting on this Plan.

9.04     **Cramdown**.  Notwithstanding the rejection of this Plan by any class of Claims or Equity Interests, the Debtor may request that the Bankruptcy Court confirm this Plan in accordance with 11 U.S.C. § 1129(b).

## ARTICLE X
### EFFECT OF CONFIRMATION

10.01  **Discharge.**   Pursuant to 11 U.S.C. §§ 524 and 1141(d), the Debtor shall be discharged from its debts, obligations and liabilities arising prior to the Confirmation Date, except as provided by this Plan. This exception from discharge includes but is not limited to all obligations and the treatment of Claims and Allowed Claims provided for in the Plan, which such Allowed Claims are not discharged and will be paid pursuant to the Plan.

10.02  **Status of Property of the Estate After Confirmation.**  All property of the Debtor shall vest in the Reorganized Debtor.

10.03  **Binding Nature of Plan.**  Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Debtor and its Creditors and the holders of its Equity Interests existing as of the Effective Date, whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted the Plan.  The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

10.04  **Permanent Injunction.**  *Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor that arose prior to the Confirmation Date, unless such action is authorized by this Plan or 11 U.S.C. § 1141 or arises as a result of the Debtor's default of any of its obligations under this Plan.*

## ARTICLE XI
### PROVISIONS GOVERNING DISTRIBUTIONS

11.01 **Payment/Delivery Agents**. The Debtor/Reorganized Debtor shall make all distributions and deliveries required to be made under this Plan.

11.02 **Date of Distributions**. Distributions by the Debtor/Reorganized Debtor shall be made on the Effective Date, or any other payment or delivery date set forth in this Plan.

11.03 **Cash Payment.** Cash payments made pursuant to this Plan shall be in U.S. funds, by check drawn on a domestic bank.

11.04 **Delivery of Distributions.** Distributions to holders of Allowed Claims shall be made at the addresses set forth on the proofs of claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of claim is filed or if the Debtor has been notified of a change of address). If any holder's distribution is returned as undeliverable, or is not sent because no address is available, no further distributions to such holder shall be made unless and until the Debtor is notified of such holder's then current address on or within 90 days from the date such distribution is made, at which time all missed distributions shall be made to such holder. All claims for undeliverable distributions must be made on or before 180 days from the Effective Date (the "Distribution Bar Date"). After such Distribution Bar Date, all unclaimed distributions shall be paid to the U.S. Bankruptcy Clerk as "unclaimed funds." The claim of any holder with respect to such property, or the claims of any state under its unclaimed property laws with respect to such property (which state shall not be deemed a holder of a Claim under such laws for purposes of this Plan), shall be discharged and forever barred.

11.05 **Time Bar to Cash Payments.** Checks issued by the Debtor shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Debtor by the holder of the Allowed Claim with respect to which such check was originally issued. Any claim in respect of such avoided check shall be made on or before the entry of a Final Decree. After the entry of the Final Decree, all unclaimed disbursements shall be distributed to the U.S. Bankruptcy Clerk as "unclaimed funds."

11.06 **Effect of Pre-Confirmation Distributions.** Nothing in this Plan shall be deemed to entitle the holder of a Claim that received, prior to the Effective Date, full or partial payment of such holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to this Plan; and all such full or partial payments shall be deemed to be payments made under this Plan for purposes of satisfying the obligations of the Reorganized Debtor hereunder.

11.07 **Prepayment.** Unless this Plan otherwise provides, the Debtor shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time.

## ARTICLE XII
### POST-CONFIRMATION PROCEDURE

12.01 **Conditions Precedent to Effectiveness.** The Plan shall not be deemed effective until and unless a Confirmation Order satisfactory to the Debtor in form and substance either (a) has been entered and become final and non-appealable, or (b) has been entered, and although appealed, has not been stayed.

12.02 **Compliance with All Applicable Laws.** Except as otherwise provided in this Plan, the Debtor shall comply with any applicable law, rule, regulation, or order of a governmental authority relating to their businesses; provided that nothing contained herein shall require such compliance by the Debtor if any such law, rule, regulation, or order is preempted by the Bankruptcy Code or if the legality or applicability of any such law, rule, regulation, or order is being contested in good faith in appropriate proceedings by the Debtor, and, where appropriate, for which an adequate reserve has been set aside on the books of the Debtor.

12.03 **U.S. Trustee Matters.**

12.03.01 **Fees.** The Debtor shall continue to pay U.S. Trustee fees until the case is closed, converted or dismissed.

12.03.02 **Reports.** The Debtor shall file post-confirmation reports in the form prescribed by the United States Trustee until the case is closed, converted or dismissed.

12.04 **Application for Final Decree.** The Debtor shall file an application for final decree as soon as is practicable but not later than six (6) months after the Effective Date. If the Plan cannot be substantially consummated as that term is defined in 11 U.S.C. § 1101(2) during this time period or if there are still pending matters to be ruled upon by the Court, the Debtor shall seek an extension of such deadline from the Court. If the Debtor fails to file an Application for Final Decree prior to such deadline or fails to timely request an extension of the same, then the Court, on its own motion or at the request of any party in interest, including the United States Trustee, may enter an order closing the Debtors' cases.

## ARTICLE XIII
### MODIFICATION OF PLAN

13.01 In accordance with 11 U.S.C. § 1127 and Fed R. Bankr. P. 3019, to the extent applicable, the Debtor may agree to modify or amend the Plan prior to the Confirmation Date, provided that notice and an opportunity for hearing are given to any affected party and the Court finds that the proposed modification or correction does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted the modification in writing.

13.02 If the Court shall find that any severable portion of this Plan shall cause the Plan to be unconfirmable, the Debtor reserves the right to modify the Plan to delete such provision.

28

13.03   Pursuant to 11 U.S.C. § 1127 (b), the Debtor may agree to modify the Plan any time after confirmation and before substantial consummation as long as the modification complies with the requirements of 11 U.S.C. §§ 1122 and 1123.  The Plan as modified will become the Plan if, after notice and hearing, the Court finds that circumstances warrant such modification and confirms the Plan as modified.

### ARTICLE XIV
### RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

14.01   **Allowance of Claims**.  To hear and determine the allowability of all claims upon objections to such claims.

14.02   **Proceedings Related to Executory Contracts and Unexpired Leases.**  To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to 11 U.S.C. §§ 365 and 1123 of the Code and Article __ of the Plan.

14.03   **Plan Interpretation.**  To resolve controversies and disputes regarding the interpretation of the Plan.

14.04   **Plan Implementation**.  To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

14.05   **Plan Modification**.  To modify the Plan pursuant to 11 U.S.C. § 1127 and applicable Bankruptcy Rules, except that no modification shall be made to the Plan that would impair, diminish or affect in any way the rights of the participants of any of the classes of the Plan without the consent of such class.

14.06   **Adjudication of Controversies.**  To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the debtor.

14.07   **Injunctive Relief**.  To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunction or other relief issued under the Plan or in the confirmation order.

14.08   **Interpleader Action**.  To entertain Interpleader actions concerning assets to be distributed or other assets of the Estate.

14.09   **Correct Minor Defects**.  To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the conformation order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder of an allowed claim are not materially and adversely affected thereby.

14.10 **Authorization of Fees and Expense.** To review and authorize payment of professional fees incurred prior to the Effective Date.

14.11 **Post-Confirmation Orders Regarding Confirmation**. To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

14.12 **Final Decree**. To enter a final decree closing the Case pursuant to Fed. R. Bankr. P. 3022.

## ARTICLE XV
### DEFAULT AND OTHER RELATED PROVISIONS

15.01 In the event of a default by the Debtor/Reorganized Debtor under the Plan and to the extent specific provisions with respect to default under the treatment of a particular class do not conflict, Creditors may exercise any rights granted to them under their documents, including those executed to evidence the Plan or any rights available to creditors under applicable non-bankruptcy law. In the absence of documents executed to evidence the Plan, this Plan may be enforced as a contract. Notwithstanding any other general provision, and except as provided in the OSO Indebtedness Documents, any Creditor alleging a default shall give the Debtor written notice with an opportunity to cure any default within twenty-eight (28) days from the date of the notice before exercising any rights available upon default.

15.02 In the event of a default by a Creditor, the Debtor may enforce this Plan as a contract in a court of competent jurisdiction. The Debtor may escrow payments to any creditor which defaults under the Plan until the default is cured. The Debtor shall give the Creditor written notice of any such default with an oppoirtunity to cure any such default within twenty-eight (28) days' from the date of the notice before exercising any rights available upon default .

15.03 In the event that the Debtor's case is converted to one under chapter 7, all assets of the Debtor on the date of conversion will revest in the Bankruptcy Estate and be subject to administration by a chapter 7 trustee.

15.04. The following provision shall apply to the Texas Comptroller of Public Accounts and the Louisiana Department of Revenue:

A failure by the reorganized Debtor to make a payment to the respective Comptroller or Secretary of the Louisiana Department of Revenue pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the reorganized Debtor at: 10500 US 80, Minden, LA 71055, Attn: Chief

30

Executive Officer, and upon Debtor's attorney at: Barron & Newburger, P.C., 7320 N. MoPac Expy., Suite 400, Austin, TX 78731, Attn: Stephen W. Sather, Esq.; ssather@bn-lawyers.com.

The Debtor shall be allowed to cure up to two (2) defaults. Upon a third default, the Comptroller, at its option, may declare the default non-cureable and proceed to collect the remainder of the debt.

The Debtor or Reorganized Debtor shall file all outstanding pre-petition tax returns with the respective Comptroller or Secretary of the Louisiana Department of Revenue not later than the claim objection bar date for such claims, as may be extended only in accordance with Section 2.08 hereinabove.

### ARTICLE XVI
### MISCELLANEOUS PROVISIONS

16.01 **Request for Relief Under 11 U.S.C. § 1129(b).** In the event any impaired Class shall fail to accept this Plan in accordance with 11 U.S.C. § 1129(a), the Debtor reserves the right to, and does hereby request the Court confirm the Plan in accordance with 11 U.S.C. § 1129(b).

16.02 **Revocation**. The Debtor reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

16.03 **Effect of Withdrawal or Revocation**. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor, the Debtor or any person in any further proceedings involving the Debtor.

16.04 **Due Authorization by Creditors**. Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim commitments, agreements or understandings express or implied, that may defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

16.05 **Entire Agreement.** The Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate the Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents; provided, however, that the Disclosure Statement may be consulted as an aid to interpreting this Plan.

16.06 **Section 1146 Exemption.** Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property

31

pursuant to this Plan shall not be taxed under any federal, state, or local law imposing a stamp, transfer or similar tax or fee.

16.07 **Governing Law**. Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

16.08 **Post-Confirmation Noticing**. Subsequent to the Confirmation Date, the Debtor shall not be required to give notice to any creditor whose claim has been disallowed or any creditor who has received all payments to which that creditor may be entitled under the terms of the Plan. Except for the Application for Final Decree, if a party is required to give notice in connection with a notice, pleading or application, such notice shall be deemed sufficient if it is sent to: (a) the Debtor; (b) the Debtor; (c) the attorney for the Debtor; (d) all Secured Creditors; (e) the Internal Revenue Service; (f) the United States Trustee, and (g) unsecured creditors requesting notice.

16.09 **Prohibition Against Discriminatory Treatment of the Debtor.** Pursuant to 11 U.S.C. § 525, a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtor, or another Person with whom the Debtor has been associated, solely because of the commencement, continuation, or termination of the Chapter 11 Case or because of any provision of this Plan or the legal effect of this Plan, and the Confirmation Order shall constitute an express injunction against any such discriminatory treatment by a governmental unit.

16.10 **Notices to the Debtor/Reorganized Debtor**. To comply with any provision in the Plan requiring notice to the Debtor/Reorganized Debtor, notice should be addressed to Jet Oilfield Services, LLC, at 10500 US 80, Minden, LA 71055. The notice will be considered served on the Debtor/Reorganized Debtor within three (3) business days of the date of mailing if mailed using certified, first class, United States mail, postage pre-paid. Service will also be considered effective if the notice is delivered by a private, commercial courier, like FedEx, and proof of delivery is provided.

DATED: August 28, 2023.

32

Respectfully submitted,


**JET OILFIELD SERVICES, LLC**


By:   /s/Thomas Smith
         Thomas Smith, Manager

**BARRON & NEWBURGER, P.C.**
7320 N. Mopac Expwy, Suite 400
Austin, Texas 78731
(512) 476-9103
(512) 476-9253 (Facsimile)

By:    /s/ Stephen W. Sather
       Stephen W. Sather
       State Bar No. 17657520
       ATTORNEY FOR DEBTOR

EXHIBIT B

## SETTLEMENT AGREEMENT

This Settlement Agreement (the **"Agreement"**) is entered into by and between Jet Oilfield Services, LLC (the **"Debtor,"** the **"Reorganized Debtor**," or **"Jet"**), Thomas Smith (**"Smith"**), Lorne Moseley (**"Moseley"**), Brandon Wilkins (**"Wilkins"**), and Oso Reserves, LLC (**"Oso"** or **"OSO"**). Individually, a party herein is referred to as a **"Party"** and collectively, all parties herein are referred to as the **"Parties**."

## RECITALS

WHEREAS, the Debtor filed a Chapter 11 Bankruptcy proceeding on October 12, 2022, in the United States Bankruptcy Court for the Western District of Texas (Midland Division), case no. 22-70126 (the "**Bankruptcy Court**");

WHEREAS, Thomas Smith, Lorne Moseley, and Brandon Wilkins hold the majority membership interest in the Debtor;

WHEREAS, the Debtor and Oso entered into an Accounts Receivable Purchase and Sale Agreement on or about June 25, 2020, which was personally guaranteed by Brian Owen;

WHEREAS, the Debtor and Oso agreed on and entered into STIPULATIONS AND AGREED FINAL ORDER ON DEBTOR'S MOTION FOR USE OF CASH COLLATERAL (A) AUTHORIZING THE USE OF CASH COLLATERAL, (B) PROVIDING ADEQUATE PROTECTION, AND (C) MODIFYING THE AUTOMATIC STAY [Doc. 86], which terms are incorporated herein by reference,

WHEREAS, no challenges were made to Oso's claims during the Challenge Period as ordered by the Court [Doc. 86],

WHEREAS, the Parties now wish to settle their disputes without any Party acknowledging any fault or liability, and

NOW, THEREFORE, in consideration of the mutual promises, covenants, and agreements set forth in the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. **Bankruptcy Court Approval**. This Agreement is subject to approval by the Bankruptcy Court and will become effective (the "**Effective Date**") upon the later of (a) entry of a Final Order (as defined in the DEBTOR'S AMENDED PLAN OF REORGANIZATION DATED AUGUST 24, 2023 (the "**Plan**") by the Bankruptcy Court and (b) the Effective Date of the Plan (as defined therein).

2. **Cash Payment.** On or before the Effective Date, the Debtor shall pay the sum of $1,810,959.57 (the **"Cash Payment"**), which shall be applied to reduce the OSO Principal and Interest Claim (as defined in the Plan).

3. **Payment over time/Promissory Note.** In addition to the Cash Payment, the Debtor agrees to pay to Oso or its order, the sum of $7,599,040.43 at the rate of 14% per annum. Beginning on the 15th day of the first month following the Effective Date (the "Oso Principal Note"), the Debtor shall make a monthly payment to Oso in the amount of $176,816.38 via wire or ACH transfer. The Debtor shall execute

the Note attached as Exhibit 1 in connection with this obligation. In addition to this Note, the Debtor shall execute an additional note in substantially the same form as Exhibit 3 as more fully described in Paragraph 5 of this Agreement described as the Post-Petition Fee Note.

4.     **ADP Access.** At all times following the execution of this Agreement that the Debtor has an outstanding balance owed to Oso, Oso shall have "read-only access" to ADP.

5.     **Maintenance of Collateral Value.**  Pursuant to the Plan, Debtor will pay B1Bank the b1Bank Principal and Interest Claim (as defined in the Plan) in full on the Effective Date of the Plan. The Debtor has also agreed to pay the b1Bank Attorney Fee Claim to b1Bank as provided in the Plan. To facilitate the payment of the b1Bank Principal and Interest Claim and the b1Bank Attorney Fee Claim, Oso has agreed to reduce its Cash Payment by $689,040.43.

As a result of and in consideration for Oso's agreement to reduce the Cash Payment by $689,040.43, the Debtor will execute the Oso Principal Note described in paragraph 3 above, and an additional promissory note in the amount of $90,000.00 in OSO's favor in substantially the same form as the attached Exhibit 3, bearing interest at the rate of 10.25% and paid over 24 equal monthly installments with the first payment being due on the 15th day of the first month following the Effective Date of the Plan (the "**b1Bank Attorney Fee Claim Note**").

As further consideration for this Agreement and to induce Oso to agree to the terms contained herein, the Debtor (a) acknowledges and agrees that Oso has first-priority security interests and first-position liens in the following collateral: accounts, chattel paper, general intangibles, supporting obligations, inventory, instruments, documents, deposit accounts, financial assets, securities, letter of credit rights and all amounts owed to Oso by the Debtor, including the reserve under the factoring agreement between the parties, whether any of the foregoing is owned now or acquired later and wherever located, and all accessions, additions, replacements, and substitutions thereto and all records of any kind related to the foregoing and all proceeds of the foregoing; (b) acknowledges that borrowing money from any creditor that has or will have a superior lien to Oso could result in dilution of Oso's collateral value securing the loan to the Debtor from Oso; (c) agrees, covenants, warrants, and represents that it will not seek, incur, or accept any loans or future borrowings from any party or creditor (hereinafter referenced as a "**Third-Party Loan**") that subordinates, impairs, diminishes, dilutes, or has the effect of subordinating, impairing, diminishing, or diluting Oso's liens in the Debtor's property so long there are outstanding amounts owed to Oso without Oso's prior written consent, which may be given or not given by OSO in its sole and absolute discretion; provided, however, if the Debtor seeks to obtain new financing, which will be secured by only inventory and equipment (as that terms is defined by the Texas Business and Commerce Code),  the Debtor must first offer such financing to Oso. If Oso declines such offer, Oso will consent (in its reasonable discretion) to subordinate its first-priority liens in only equipment and inventory subject to terms and conditions contained herein.  If the parties disagree on the request for subordination, the Debtor may seek permission from the Bankruptcy Court to borrow additional working capital which is secured by Inventory and/or Equipment only  over Oso's objection if – and only if – the Bankruptcy Court authorizes such an increase following (i) at least thirty days' notice, (ii) an evidentiary hearing, and (iii) upon a finding by the Bankruptcy Court that Oso's secured interests remains as protected as they are upon approval of this Agreement; and (d) Debtor acknowledges and agrees that Oso will maintain its lien-position priority rights with respect to its collateral in accordance with all applicable laws.

6.     **Security Interest.** In addition to the first-priority security interests and liens held by Oso,

which the Debtor confirms is binding, valid and enforceable, Smith, Mosely, and Wilkins (individually, a "**Pledgor**" and, collectively, the "**Pledgors**") each agree to grant and pledge to Oso a continuing first-priority security interest and lien in his respective membership interests in Jet (individually and collectively, the "**Pledged Membership Interests**"), as more particularly described herein, which such Pledged Membership Interests in the aggregate constitute at all times at least 40% of the total membership interests in Jet as additional collateral as consideration for the terms of this Agreement.

The Pledged Membership Interests shall be pledged by each Pledgor by execution of the Security Agreement attached as Exhibit 2. Each Pledgor's pledge of his respective Pledged Membership Interests shall be in equal percentage (based on the total membership interests of Jet that each Pledgor owns and holds) to each other Pledgor's Pledged Membership Interest, as more particularly described on Schedule 1 to the Security Agreement.  Each Pledgor expressly warrants that he is a Manager and Member of the Debtor and has the authority and ability to pledge his membership interest in the Debtor and further warrants and represents that (i) the pledging of the Pledged Membership Interests as collateral to OSO does not violate the terms of Jet's company agreements, (ii) each such pledge is free and clear of any and all liens, security interests, or any other encumbrances, (iii) the Pledgors own at least 40% of the outstanding membership interests in Jet, (iv) at all times, Oso shall have a pledge of at least 40% of the total membership interests in the Debtor, and (v) no Pledgor shall dispose, sell, transfer, or assign any Pledged Membership Interests to any other person, affiliate, or entity (or contract to do any of the foregoing) without Oso's prior written consent. To the extent necessary, each Pledgor expressly represents, warrants, consents, and waives any requirement of any agreement, including the Debtor's operating or governance agreements, that would otherwise prohibit a pledge of any Pledgor's membership interest. Each Pledgor further warrants that the shares have not been certificated and that he has the authority to pledge such interests free and clear of any liens, claims, interests, and encumbrances of any kind or nature.

7.	**Additional Security Interest.**  As additional consideration for this Agreement, the Debtor hereby grants additional first-priority security interests and liens in and to the following property, whether any of the following is owned now or acquired later and wherever located: (i) inventory, (ii) equipment (including items that are or become fixtures), (iii) real property, (iv) all patents and patent applications and the inventions and improvements described and claimed therein, including without limitation, all patents and patent applications, together with (a) all reissues, divisionals, continuations, renewals, substitutions, extensions and continuations-in-part thereof, (b) all income, royalties, damages and payments now or hereafter due or payable under and with respect thereto, including without limitation, damages and payments for past, present and future infringements thereof, (c) the right to sue for past, present and future infringements thereof, and (d) all rights corresponding, incident or relating thereto (collectively, the "**Patents**");  (v) all licenses and similar agreements and covenants not to sue with respect to all Patents or any of them (other than any existing license agreements or covenants not to sue which by their terms prohibit assignment, transfer, or the grant of a security interest by Debtor or give the other party thereto the right to terminate the same upon an assignment, transfer, or grant of a security interest therein, which licenses or covenants not to sue do not in the aggregate have a material adverse effect on the value or utility of the Patents or other assets of Debtor individually or as a whole), together with (a) all renewals, extensions, supplements and continuations thereof and supplements thereto, (b) income, royalties, damages and payments now or hereafter due or payable with respect thereto, including without limitation, damages and payments for past, present and future breaches thereof, (c) the right to sue for past, present and future breaches thereof, and (d) all rights corresponding, incident or relating thereto (collectively, the "**Licenses**");  (vi) all trademarks and trademark applications (excluding intent to use applications), together with (a) all continuations, renewals, substitutions, extensions and continuations-in-

3

part thereof, (b) all income, royalties, damages and payments now or hereafter due or payable under and with respect thereto, including without limitation, damages and payments for past, present and future infringements thereof, (c) the right to sue for past, present and future infringements thereof, and (d) all rights corresponding, incident or relating thereto (collectively, the "**Trademarks**"), (vii) all copyrights and copyright applications together with (a) all reissues, divisionals, continuations, renewals, substitutions, extensions and continuations-in-part thereof, (b) all income, royalties, damages and payments now or hereafter due or payable under and with respect thereto, including without limitation, damages and payments for past, present and future infringements thereof, (c) the right to sue for past, present and future infringements thereof, and (d) all rights corresponding, incident or relating thereto (collectively, the "**Copyrights**"), (viii) forty percent (40%) of the aggregate membership interests of the Debtor, which such membership interests shall be pledged by each Pledgor as set forth herein; and (ix) all proceeds and products of the foregoing, including without limitation all payments under insurance or any indemnity or warranty payable in respect of any of the foregoing and all accessions, additions, replacements, and substitutions thereto and all records of any kind related to the foregoing.

All liens and security interests granted to OSO herein and in the Plan, including the liens granted by each Pledgor, shall be (i) of now-owned and hereafter-acquired property, as applicable; (ii) valid, binding, continuing, enforceable, unavoidable, first-priority positions that secure binding, continuing, enforceable, and unavoidable obligations and interests of the Debtor or each Pledgor or such person, as applicable; (iii) in addition to, and not in substitution of, OSO's existing first-position liens and first-priority security interests; (iv) deemed automatically perfected without reliance on the filing of any financing statements or recordation, and OSO shall not be required to obtain security or similar agreements or corporate resolutions, file further financing statements or record any documents, or take any other steps – including possession – under applicable law to create or perfect any such liens granted to pursuant to the Plan; and (v) although the Debtor acknowledges and agrees that Oso is under NO obligation to advance the Debtor any additional funds, any additional funds advanced by Oso to the Debtor shall be secured and automatically perfected pursuant to the terms and conditions in this Agreement.

Nonetheless, OSO may, but shall not be required to, file financing statements or other documents in any jurisdiction or take any other action to validate or perfect the security interests granted to it under this Plan or the Confirmation Order. If OSO, in its sole and absolute discretion, chooses to file financing statements or other documents or otherwise confirms perfection of such security interests, the Debtor and each Pledgor or person shall, at OSO's request, execute or turnover any document necessary, and such financing statements or similar documents or possession shall be deemed to have been filed or recorded and perfected on the Petition Date, *nunc pro tunc*.

8.      **Access to Books and Records.** At all times following the execution of this Agreement that the Debtor has an outstanding balance owed to Oso, the Debtor grants to Oso, their agents, designees or other professional persons, the right to inspect the condition of and appraise the assets of the Debtor's estate and to review the Debtor's books and records during ordinary business hours upon three (3) business days prior notice from OSO; provided, however, that if an Event of Default exists, OSO shall not be required to give the three (3) business days advance notice. The Debtor shall cooperate fully with any such inspection or appraisal.

9.      **Tax Returns.** The Debtor shall provide copies annually of all state and federal tax returns filed by the Debtor within fourteen (14) days of such returns being submitted to the taxing authority.

10.    **Attorneys' fees.** In addition to the payments called for herein, the Debtor agrees to pay OSO the sum of $300,000 for a portion of its reasonable attorney fees (the "Oso Attorney Fee Claim") in eighteen equal payments to begin on the fifteenth (15th) day of the first month following the Effective Date and continuing on the same day each month thereafter until paid in full, the Oso Attorney Fee Claim shall not accrue interest.

11.    **Anti-Layering/Dilution.** Notwithstanding anything herein to the contrary, the Debtor shall not, directly or indirectly, incur any new indebtedness unless such indebtedness is expressly subordinated in right of payment and lien priority to the obligations owed to Oso or otherwise approved by Oso pursuant to paragraph 5. Further, notwithstanding anything herein to the contrary, the Debtor shall not, directly or indirectly, grant any new liens or security interests in assets unless such liens and security interests are expressly subordinated to Oso's liens in all Debtor's assets. In addition to the foregoing, the Debtor and each Individual agree on behalf of itself/himself and the Debtor that, for so long as any obligations owed to Oso shall be outstanding, the Debtor and each Pledgor hereby irrevocably waive any right to grant any new lien or security interest or incur any indebtedness that has the benefit of equal or greater priority with respect to liens or security interests than the liens and security interests granted herein securing the indebtedness and obligations owed to Oso, except as provided in paragraph 5. For the avoidance of doubt, notwithstanding anything herein to the contrary, each Pledgor shall not grant any security interest or liens in the Pledged Membership Interests pledged to Oso pursuant hereto unless such lien and security interest is expressly subordinated to Oso's liens and security interests in such Pledged Membership Interests.

12.    **Plan Amendment.** The Debtor agrees to (a) amend its plan of reorganization to include and incorporate the terms of the provisions contained in this Agreement into the Plan and (b) execute any additional documents as necessary to effectuate this Agreement. Upon payment of the B1 Bank Claim pursuant to the Amended Plan [Doc. 304], the Debtor will (a) provide confirmation of the release of all liens of B1bank within 14 days and (b) use best efforts to cause b1Bank to execute within seven (7) days of payment receipt (i) liens releases, (ii) acknowledgments of liens releases, or (iii) UCC-1 termination statements.

If b1Bank fails to so execute, the Debtor agrees to file the necessary papers with the Bankruptcy Court, asking the Court to (a) compel such execution or (b) deem the b1Bank liens and security interests in the Debtor's property released and forever discharged.

13.    **Non-Disparagement**. The Parties and their counsel agree not to make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage, or in any way criticize the personal or business reputation, practices, or conduct of the Parties or their counsel.

14.    **No Admissions**. Nothing contained in this Agreement is to be construed as an admission of liability by any Party. Any such liability is expressly denied. Nothing contained in this Agreement, nor anything said or communicated in the course of negotiating this Agreement, may be offered in any proceeding as evidence of any liability or wrongdoing by any Party; *provided*, *however*, this Agreement and all communications and statements made in connection herewith may be introduced in any proceeding to enforce any of the terms of this Agreement.

15.    **Amendment, Modification, and Waiver**. This Agreement sets forth the entire agreement between the Parties and supersedes any and all prior and contemporaneous oral or written agreements or

5

understandings between the Parties. This Agreement cannot be amended, modified, or supplemented in any respect except by a subsequent written agreement signed by the Parties.

16.     **Representation by Counsel; Mutual Drafting**. The Parties agree that they have been represented by counsel during the negotiation and execution of this Agreement and have participated jointly in the negotiation and drafting of this Agreement and hereby waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document will be construed against the party drafting such agreement or document. If an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

17.     **Construction**. The captions and headings of the paragraphs, subparagraphs, and sections of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

18.     **Governing Law**. This Agreement and any dispute arising out of or related to this Agreement shall be governed and construed in accordance with the laws of the State of Texas, including any applicable statutes of limitation, without regard to any otherwise applicable principles of conflicts of law or choice-of-law rules that would result in the application of the substantive or procedural rules or law of any other jurisdiction.

19.     **Successors and Assigns**. This Agreement shall be binding on and inure to the benefit of the Parties and their respective successors and assigns, including any chapter 7 trustee; *provided*, *however*, that this Agreement is not assignable by any Party without the prior written consent of the other Party. Any attempted assignment in contravention of the foregoing shall be null and void and of no force or effect.

20.     **Fees and Expenses**. All fees, costs, and expenses incurred in connection with the negotiation, documentation, execution, and delivery of this Agreement shall be borne exclusively by the respective Party incurring such fees, costs, or expenses, except for the OSO Attorney Fee Claim, which is the sole obligation of the Debtor as described in paragraph 10.

21.     **Reliance**. Each Party acknowledges that, in executing this Agreement, it is not relying on and has not relied on any representation or statement by the other Party.

22.     **Severability**. If any section, paragraph, subparagraph, or sentence within this Agreement is declared by a court of competent jurisdiction to be void or unenforceable, such portion shall be deemed severed from the remainder of this Agreement, and the balance of this Agreement shall remain in full force and effect.

23.     **Counterparts**. Delivery of executed signature pages in one or more counterparts (including via facsimile or the electronic exchange of portable document format [PDF] copies) all of which shall together constitute one and the same instrument and shall be sufficient to render this Agreement effective in accordance with its terms.

*Thomas Smith*                          8/30/2023
_____        _____
**Jet Oilfield Services, LLC**              Date
**By:** Thomas Smith
**Its:** CEO




_____        _____
**OSO RESERVES, LLC**                   Date
**By:**
**Its:**

*Thomas Smith*                          8/30/2023
_____        _____
**THOMAS SMITH**                        Date


*Lorne Moseley*                         8/30/2023
_____        _____
**LORNE MOSELEY**                       Date


*Brandon Wilkins*                       8/30/2023
_____        _____
**BRANDON WILKINS**                     Date

7

shall together constitute one and the same instrument and shall be sufficient to render this Agreement effective in accordance with its terms.

| | |
|---|---|
| **Jet Oilfield Services, LLC**<br>**By:**<br>**Its:** | Date |
| *[signature: Kathy R Boone]*<br>**OSO RESERVES, LLC**<br>By: *KATHY R. BOONE*<br>Its: *MEMBER/MANAGER* | *8/29/2023*<br>Date |
| **THOMAS SMITH** | Date |
| **LORNE MOSELEY** | Date |
| **BRANDON WILKINS** | Date |

7

# EXHIBIT 1

8

**PROMISSORY NOTE**

$7,599,040.43                    Lubbock, Texas                    August 30, 2023

1.      FOR VALUE RECEIVED, the undersigned, JET OILFIELD SERVICES, LLC, a Texas Limited Liability Company ("Borrower"), promises to pay OSO RESERVES, LLC, a Texas Limited Liability Company ("Lender"), the sum of SEVEN MILLION FIVE HUNDRED NINETY-NINE AND 00/100 DOLLARS ($7,599,040.43) (the "Principal Amount"), with interest from the inception date at the rate of fourteen percent (14.00%) per annum, both principal and interest payable at 1615 West Loop 289, Lubbock, Texas 79416.  Interest on this note ("Note") shall be computed on the basis of the actual number of days over 365 or 366 days per year and the actual number of days elapsed.

2.      This Note is made and given in connection with that certain Settlement Agreement ("Settlement Agreement") dated as of August 30, 2023 by and among the Borrower, Lender and other parties signatory thereto.

3.      Interest and principal payments are due in equal monthly installments of One Hundred Seventy-Six thousand, eight hundred and sixteen dollars and 38/100 ($176,816.38), on the fifteenth (15th) day of each month, beginning September 15, 2023 and continuing until the expiration of five years from the date of this Note, when the entire amount of principal and accrued, unpaid interest will be payable in full. Payments will be applied first to accrued interest and the remainder to reduction of the Principal Amount.

4.      The undersigned maker shall pay to the holder hereof a late charge of five per cent (5%) of any monthly installment if such monthly installment is received more than ten (10) days after its due date.

5.      Default and Remedies.

(a)      An "Event of Default" under this Note shall mean the occurrence of any of the following events:

(i)      If the Borrower shall fail to make when due the payment of the accrued interest or Principal Amount or any interest thereon as required by this Note, whether at the due date thereof or by acceleration

9

thereof or otherwise and such payment default remains uncured for a period of two (2) business days after written notice thereof;

(ii)     If the Borrower shall fail to duly observe or perform in any respect any covenant, condition or agreement required to be observed or performed under this Note and such failure remains uncured for a period of fifteen (15) calendar days after written notice thereof;

(iii)    The commencement by the Borrower of any bankruptcy, insolvency, arrangement, reorganization, receivership or similar proceedings under any federal or applicable state law; or the commencement against the Borrower, of any bankruptcy, insolvency, arrangement, reorganization, receivership or similar proceeding under any federal or applicable state law by creditors of the Borrower, provided, that such proceedings shall not be deemed an Event of Default if such proceeding is controverted within thirty (30) days and dismissed and vacated within sixty (60) days of commencement, except in the event that any of the actions sought in any such proceeding shall occur or the Borrower shall take action to authorize or effect any of the actions in any such proceeding;

(iv)    if any proceeding or case shall be commenced in any court of competent jurisdiction seeking dissolution or winding-up of the Borrower;

(v)     if the Borrower is dissolved, either voluntarily or involuntarily; or

(vi)    a breach by the Borrower of any other agreement between it and a Lender, provided such breach is not cured within any applicable cure period.

(b)     Upon an Event of Default:

(i)     (1) other than with respect to an Event of Default pursuant to clause 5(a)(iii) above, the Lender may declare the outstanding Principal Amount, and all accrued and unpaid interest on the Principal Amount, immediately due and payable, and such amount shall be collectible immediately or at any time after such Event of Default and (2) with respect to an Event of Default pursuant to clause 5(a)(iii) above,

10

the outstanding Principal Amount, and all accrued and unpaid interest on the Principal Amount, shall be automatically and immediately due and payable, and such amount shall be collectible immediately or at any time after such Event of Default; and

(ii)     the restrictive covenants contained in the Settlement Agreement shall remain in place until payment of this Note.

(c)     The rights and remedies provided by this Note shall be cumulative, and shall be in addition to, and not exclusive of, any other rights and remedies available at law or in equity.

6.     In addition, if an Event of Default has occurred and is continuing, from and after the date such Event of Default occurred, the entire outstanding Principal Amount of this Note and, to the extent permitted by applicable law, any unpaid interest from time to time due thereon will bear interest, payable on demand, at the rate of eighteen percent (18%) per annum; provided, however, upon the cessation or cure of such Event of Default, this Note will again bear interest at the rate of fourteen percent (14%) per annum, as set forth in Section 1.

7.     This Note may be prepaid in whole or in part without advance notice, premium or penalty.

8.     Each maker, surety, or endorser hereon severally waives grace, demand, presentment, notice of intent to accelerate, notice and protest, and notice of acceleration, and consents that time of payment may be extended without notice.  And it is hereby specially agreed that if this Note is placed in the hands of an attorney for collection, or collected by suit or through Probate or Bankruptcy proceedings, the undersigned agrees to pay reasonable attorney's fees additional on the principal and interest then due hereon. Notwithstanding any provision hereof to the contrary, no provision in this Note shall require or permit the collection of interest or other charges in excess of the maximum rate permitted by applicable State or Federal law. If any such excess is provided for, or adjudicated to be so provided for, any such excess shall be, at the holder's option, applied either as a credit against principal or refunded to maker hereof.

11

9.　　Lender may assign this Note.

10.　　**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES**.

11.　　**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES**.

**JET OILFIELD SERVICES, LLC**

*Thomas Smith*

By: ___Thomas Smith___

Title: ___CEO___

12

# EXHIBIT 2

13

## SECURITY AGREEMENT

### (PLEDGE)

Thomas Scott Smith, Brandon Carlton Wilkins, and Lorne Randall Moseley

**Thomas Smith**                              (Debtor's Name)

| 930 W Texas Ave Apt #W-1 Waskom | Harrison | TX | 75692 |
|---|---|---|---|
| Mail Address          City | County | State | Zip |

**Brandon Wilkins**

| 8511 Ridgellea St      Dallas | Dallas | TX | 75209 |
|---|---|---|---|
| Mail Address          City | County | State | Zip |

**Lorne Moseley**

| 1433 Suwannee Lane          Benton | Bossier Parish | LA | 71006 |
|---|---|---|---|
| Mail Address          City | County | State | Zip |

(hereinafter called in accordance with the Uniform Commercial Code – each a DEBTOR and collectively DEBTORS) for value received hereby grants to:

Oso Reserves, LLC.
(Secured Party's Name)

(hereinafter called in accordance with the Uniform Commercial Code – SECURED PARTY) whose mail address is:

| 1615 W. Loop 289 | Lubbock | Lubbock | TX | 79416 |
|---|---|---|---|---|
| Mail Address | City | County | State | Zip |

a security interest in and delivers to SECURED PARTY the following described property (which hereinafter is referred to as COLLATERAL) to-wit:

See Schedule 1 attached hereto and made a part hereof.

To secure Jet Oilfield Services, LLC's ("OBLIGOR") obligation to SECURED PARTY pursuant to a promissory note dated August 30, 2023 in original aggregate principal amount of $7,599,000.40 (the "Note") and all other interest, costs, fees, and premiums in connection therewith (collectively, the "Obligations").

The Debtor hereby acknowledges and agrees that the security interest created hereby in the Collateral constitutes continuing collateral security for all of the Obligations, whether now existing or hereafter arising, including, without limitation, any amounts currently outstanding and any future advances.

14

The warranties, covenants, terms and agreements set forth below are incorporated herein and made a part hereof for all intents and purposes. DEBTOR and SECURED PARTY as used in this Security Agreement include the heirs, executors, or administrators, successors or assigns of those parties.

**DEBTORS WARRANT, COVENANT AND AGREE:**

1. That all financial or credit statements deposited with or relied upon by SECURED PARTY prior to, contemporaneously with, or subsequent to execution of this Security Agreement are or will be true, correct, complete, valid and genuine.

2. That the Collateral: (a) is genuine, free from adverse claims or other security interest, default, or defenses; and (b) the same comply with applicable laws concerning form, content and manner or preparation and execution.

3. That DEBTOR owns the COLLATERAL and has the right to transfer any interest therein; the COLLATERAL is not subject to the interest of any third person; and DEBTOR will defend the COLLATERAL and its proceeds against the claims and demands of all third persons.

4. That DEBTOR shall pay prior to delinquency all taxes, charges, liens and assessments against the COLLATERAL, and upon DEBTOR'S failure to do so, SECURED PARTY at its option may pay any of them and shall be the sole judge of the legality or validity thereof and the amount necessary to discharge the same. Such payment shall become part of the indebtedness secured by this Security Agreement and shall be paid to SECURED PARTY by DEBTOR immediately without demand, with interest thereon at the rate of ten percent (10%) per annum.

5. SECURED PARTY'S duty with reference to the COLLATERAL shall be solely to use reasonable care in the custody and preservation of COLLATERAL in SECURED PARTY'S possession, and to receive collections, remittances and payments on such COLLATERAL as and when made and received by SECURED PARTY and the SECURED PARTY shall have the option of applying the amount or amounts so received, after deductions of any collection costs incurred, as payment upon any indebtedness of DEBTOR to SECURED PARTY pursuant to provisions of this Security Agreement or holding the same for the account of DEBTOR. SECURED PARTY shall not be responsible in any way for any depreciation in the value of the COLLATERAL nor shall any duty of responsibility whatsoever rest upon SECURED PARTY to take necessary steps to preserve rights against prior parties or to enforce collection of the COLLATERAL by legal proceedings or otherwise.

6. **Title** – Except for the security interest hereby granted, DEBTORS have, or upon acquisition will have, full fee simple title to Collateral free from any lien, security interest, encumbrance, or claim, and DEBTORS will at DEBTORS' cost and expense defend any action which may affect SECURED PARTY'S security interest in or DEBTORS' title to Collateral.

7. **Financing Statement** – That no Financing Statement covering the Collateral or any part thereof is on file in any public office and at SECURED PARTY'S request DEBTORS will join in executing all necessary Financing Statements in forms satisfactory to SECURED PARTY and will pay the cost of filing same and will further execute all other instruments deemed necessary by SECURED PARTY and pay the cost of filing same.

15

8.     **Sale, Lease, or Disposition of Collateral** -  DEBTORS will not, without written consent of SECURED PARTY sell, contract to sell, lease, encumber, transfer, or dispose of Collateral or any interest therein until this Security Agreement and all debts secured thereby have been fully satisfied.

9.     **Assignment of Security Agreement** - This Security Agreement, SECURED PARTY'S rights hereunder or the indebtedness hereby secured may be assigned from time to time to any subsequent holder of the Note, and in any such case the Assignee shall be entitled to all of the rights, privileges and remedies granted in this Security Agreement to SECURED PARTY, and DEBTORS will assert no claims or defenses he may have against SECURED PARTY against the Assignee except those granted in this Security Agreement.

10.     **Delay not to constitute waiver -** SECURED PARTY may delay exercising or omit to exercise any right or remedy under this Security Agreement without waiving that or any other past, present or future right or remedy, except in writing signed by SECURED PARTY.

11.     **Additional Security Interest** – The security interest in the Collateral hereby granted by each DEBTOR to SECURED PARTY for the purpose of securing the Obligations includes, without limitation, each DEBTOR'S economic and management rights with respect to its membership interests in Obligor, rights to subscribe, liquidating dividends, stock dividends paid in stocks, any securities, or other property which DEBTOR may hereafter become entitled to receive in each case on account of DEBTOR'S ownership or interest in the Collateral and all proceeds and substitutions of the Collateral all of which each DEBTOR shall immediately deliver to SECURED PARTY.  The terms and provisions of this paragraph shall not be construed to mean that DEBTOR is authorized to sell or dispose of the Collateral or any part thereof without SECURED PARTY'S consent.  If at any time the SECURED PARTY does not have a pledge of at least 40% of the total membership interests in the Obligor, each DEBTOR shall promptly take all actions necessary or requested by SECURED PARTY to ensure that SECURED PARTY has a pledge at all times of at least 40% of the total membership interests in the Obligor, including, but not limited to, updating schedules to this agreement or delivering additional documentation to evidence an additional pledge of such DEBTOR's membership interest in OBLIGOR in order to satisfy the foregoing.

12.     **Taxes** - DEBTORS will pay promptly when due all taxes and assessments upon the Collateral or for its use and operation.

13.     **Debtor Includes-Texas Law Applicable** - DEBTORS as used in this instrument shall be construed as singular or plural to correspond with the number of persons executing this instrument as DEBTORS.  If more than one person executes this instrument as DEBTORS, their obligations under this instrument shall be joint and several.  Terms used in this instrument which are defined in the Texas Uniform Commercial Code are used with the meanings as therein defined. The law governing this secured transaction shall be that of the State of Texas in force at the date of this instrument.

14.     **Future Indebtedness** - The security interest hereby granted secures the indebtedness of OBLIGOR to SECURED PARTY, direct or indirect, absolute or contingent, due or to become due, whether existing or hereafter arising.

15.     **Reimbursement of Expenses** - At SECURED PARTY'S option, SECURED PARTY may discharge taxes, liens, interest, or perform or cause to be performed for and in behalf of DEBTOR any actions and conditions, obligations or covenants which DEBTORS have failed or refused to perform and may pay for the preservation and protections of Collateral and all sums so expended, including but not limited to,

16

reasonable attorney's fees and other legal expenses incurred or paid by SECURED PARTY in exercising or protecting SECURED PARTY'S interest, rights and remedies under this Security Agreement, court costs, agent's fees, or commissions, or any other costs or expenses shall bear interest from the date of payment at the rate of 14% per annum and shall be payable at the place designated in the above described note and Settlement Agreement with Obligor and shall be secured by this Security Agreement.

16. **Change of Residence or Place of Business** - DEBTORS will promptly notify SECURED PARTY of any change of DEBTORS' residence, or chief place of business.

17. **Attorney-in-Fact** - DEBTORS hereby appoint SECURED PARTY DEBTORS' attorney-in-fact to do any and every act which DEBTORS is obligated by this Security Agreement to do and to exercise all rights of DEBTORS in Collateral and to make collections and to execute any and all papers and instruments and to do all other things necessary to preserve and protect Collateral and to protect SECURED PARTY'S security interest in said Collateral.

18. **Time-Waiver** - DEBTORS agree that in performing any act under this Security Agreement and the note secured thereby that time shall be of the essence and that SECURED PARTY'S acceptance of partial or delinquent payments, or failure of SECURED PARTY to exercise any right or remedy shall not be a waiver of any obligation of DEBTORS or right of SECURED PARTY or constitute a waiver of any other similar default subsequently occurring.

19. **Default** - DEBTORS shall be in default under this Security Agreement upon the happening of any of the following events or conditions:

1. Default in the payment or performance by DEBTORS of any obligation, covenant or liability contained or referred to herein;

2. Any warranty, representation or statement made or furnished to SECURED PARTY by or on behalf of DEBTORS proves to have been false in any material respect when made or furnished;

3. Any event which results in the acceleration of the maturity of the indebtedness of DEBTORS to others under any indenture, agreement or undertaking;

4. The making of any levy, seizure, or attachment of any of the Collateral; or

5. Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the Collateral assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against DEBTORS.

20. **Remedies** - Upon the occurrence of any such event of default, and at any time thereafter, SECURED PARTY may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of the same and exercise any and all of the rights and remedies provided by the Uniform Commercial Code of Texas, as well as all other rights and remedies possessed by SECURED PARTY. SECURED PARTY may, at SECURED PARTY'S option, sell, assign and deliver all or any part of Collateral at any Broker's Board or at public or private sale, without written notice or advertisement

17

and bid and become purchaser at any public sale or at any Broker's Board. If notice to DEBTORS is required by the Uniform Commercial Code of Texas of public or private sale of any part of Collateral, as to that part of Collateral which the Uniform Commercial Code of Texas requires said notice. SECURED PARTY will give DEBTORS reasonable notice of the time and place of any public or private sale thereof and the requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of DEBTORS shown at the beginning of this Security Agreement at least five (5) days before the time of the sale or disposition. SECURED PARTY may apply the proceeds of any disposition of Collateral available for satisfaction of DEBTORS' indebtedness and the expenses of sale in any order of preference which SECURED PARTY, in SECURED PARTY'S sole discretion determines.

Dated: August ____, 2023.

<strong>DEBTORS:</strong>

*Thomas Smith*

**Thomas Smith**

*Brandon Wilkins*

**Brandon Wilkins**

*Lorne Moseley*

**Lorne Moseley**

18

**Schedule 1 to Security Agreement:**

To secure the prompt payment and performance in full when due, whether at maturity, by lapse of time, acceleration, mandatory prepayment or otherwise, of the Obligations, each Debtor hereby grants to Secured Party a continuing security interest in, and a right to set off against, any and all right, title and interest of such Debtor in and to the Pledged Equity, in each case, whether now owned or existing or hereafter acquired, owned, or existing, and wherever located (the "Collateral"):

"Pledged Equity" means, with respect to each Debtor, a pro rata percentage of his respective membership interests in OBLIGOR, which in the aggregate and at all times constitute at least 40% of the total membership interests in OBLIGOR, including, but not limited to, the following:

a.      all equity interests representing a dividend thereon, or representing a distribution or return of capital upon or in respect thereof, or resulting from an additional issuance thereof, a stock split, revision, reclassification or other exchange therefor, and any subscriptions, warrants, rights or options issued to the holder thereof, or otherwise in respect thereof;

b.      all other payments due or to become due to such Debtor in respect of such equity interests, whether under any by-laws, operating agreements, limited liability company agreements, other governing documents, by-law or otherwise, whether as contractual obligations, damages, insurance proceeds or otherwise;

c.      all claims, rights, power, privileges, authority, options, security interests, liens and remedies, if any, of such Debtor, under any governing document, or at law, or otherwise in respect of such equity interests;

d.      all future claims, if any, of such Debtor against the equity issuer of such equity interests for moneys loaned or advanced, for services rendered or otherwise;

e.      all of such Debtor's rights under any by-laws, limited liability company agreement, operating agreement or other governing documents, at law or otherwise to exercise and enforce every right, power, remedy, authority, option and privilege of such Debtor relating to such equity interests, including without limitation, any voting rights;

f.      in the event of any consolidation or merger involving the equity issuer thereof and in which such equity issuer is not the surviving person, all shares of each class of the equity interests of the successor person formed by or resulting from such consolidation or merger or into which such equity interests was exchanged or converted;

g.  with respect to such equity interests, all of such Debtor's economic and management rights, title and interest in the equity issuer, whether under the limited liability operating agreement or other governing documents, at law or otherwise, including such Debtor's limited liability company interest (as such term is defined under applicable law), such Debtor's status as a "member" (as such term is defined under applicable law) therein, such Debtor's right to participate in the management of the business and affairs of the equity issuer (including, without limitation, any voting rights), such Debtor's capital therein and all of

19

its interest in all profits, losses, assets and other distributions to which such Debtor shall at any time be entitled in respect of such equity interests;

h.      all books, records, ledger cards, files, correspondence, customer lists, blueprints, technical specifications, manuals, computer software, computer printouts, tapes, disks and related data processing software and similar items that at any time evidence or contain information relating to any of the Collateral or are otherwise necessary or helpful in the collection thereof or realization thereupon; and

i.    all accessions and all proceeds and products of any and all of the foregoing, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing.

As of the date of this agreement, the Pledged Equity is reflected in the table of equity interests set forth on Schedule A hereto, as such Schedule A may hereafter be amended or modified in writing from time to time to ensure compliance with the terms of this agreement. For the avoidance of doubt, the failure of the parties hereto to so update Schedule A to reflect any additional Pledged Equity after the date hereof that is required to be pledged as Collateral shall not operate as a waiver by Secured Party of all obligations and covenants of each Debtor to ensure at all times the Collateral shall at all times constitute at least 40% of the total membership interests in OBLIGOR.

20

**Schedule A**

| Equity Issuer | Debtor | Percentage of ownership of OBLIGOR held by Debtor | Percentage of ownership of OBLIGOR held by Debtor and pledged to OSO |
|---|---|---|---|
| Jet Oilfield Services, LLC | Thomas Smith | 40.00% | 16.00% |
| Jet Oilfield Services, LLC | Lorne Moseley | 30.00% | 12.00% |
| Jet Oilfield Services, LLC | Brandon Wilkins | 30.00% | 12.00% |

1

# EXHIBIT 3

**POST-PETITION FEE NOTE**

$90,000.00                                Lubbock, Texas                                August 30, 2023

1.      FOR VALUE RECEIVED, the undersigned, JET OILFIELD SERVICES, LLC, a Texas Limited Liability Company ("Borrower"), promises to pay OSO RESERVES, LLC, a Texas Limited Liability Company ("Lender"), the sum of NINETY-THOUSAND DOLLARS ($90,000) (the "Principal Amount"), with interest from the inception date at the rate of ten and one quarter percent (10.25%) per annum, both principal and interest payable at 1615 West Loop 289, Lubbock, Texas 79416. Interest on this note ("Note") shall be computed on the basis of the actual number of days over 365 or 366 days per year and the actual number of days elapsed.

2.      This Note is made and given in connection with that certain Settlement Agreement ("Settlement Agreement") dated as of August 30, 2023 by and among the Borrower, Lender and other parties signatory thereto.

3.      Interest and principal payments are due in equal monthly installments of FOUR THOUSAND, ONE HUNDRED AND 63 DOLLARS AND 44/100 ($4,163.44), on the fifteenth (15th) day of each month, beginning September 15, 2023 and continuing until the expiration of two years from the date of this Note, when the entire amount of principal and accrued, unpaid interest will be payable in full. Payments will be applied first to accrued interest and the remainder to reduction of the Principal Amount.

4.      The undersigned maker shall pay to the holder hereof a late charge of five per cent (5%) of any monthly installment if such monthly installment is received more than ten (10) days after its due date.

5.      Default and Remedies.

(a)      An "Event of Default" under this Note shall mean the occurrence of any of the following events:

(i)      If the Borrower shall fail to make when due the payment of the accrued interest or Principal Amount or any interest thereon as required by this Note, whether at the due date thereof or by acceleration

2

thereof or otherwise and such payment default remains uncured for a period of two (2) business days after written notice thereof;

(ii)    If the Borrower shall fail to duly observe or perform in any respect any covenant, condition or agreement required to be observed or performed under this Note and such failure remains uncured for a period of fifteen (15) calendar days after written notice thereof;

(iii)    The commencement by the Borrower of any bankruptcy, insolvency, arrangement, reorganization, receivership or similar proceedings under any federal or applicable state law; or the commencement against the Borrower, of any bankruptcy, insolvency, arrangement, reorganization, receivership or similar proceeding under any federal or applicable state law by creditors of the Borrower, provided, that such proceedings shall not be deemed an Event of Default if such proceeding is controverted within thirty (30) days and dismissed and vacated within sixty (60) days of commencement, except in the event that any of the actions sought in any such proceeding shall occur or the Borrower shall take action to authorize or effect any of the actions in any such proceeding;

(iv)    if any proceeding or case shall be commenced in any court of competent jurisdiction seeking dissolution or winding-up of the Borrower;

(v)    if the Borrower is dissolved, either voluntarily or involuntarily; or

(vi)    a breach by the Borrower of any other agreement between it and a Lender, provided such breach is not cured within any applicable cure period.

(b)    Upon an Event of Default:

(i)    (1) other than with respect to an Event of Default pursuant to clause 5(a)(iii) above, the Lender may declare the outstanding Principal Amount, and all accrued and unpaid interest on the Principal Amount, immediately due and payable, and such amount shall be collectible immediately or at any time after such Event of Default and (2) with respect to an Event of Default pursuant to clause 5(a)(iii) above,

3

the outstanding Principal Amount, and all accrued and unpaid interest on the Principal Amount, shall be automatically and immediately due and payable, and such amount shall be collectible immediately or at any time after such Event of Default; and

(ii)     the restrictive covenants contained in the Settlement Agreement shall remain in place until payment of this Note.

(c)     The rights and remedies provided by this Note shall be cumulative, and shall be in addition to, and not exclusive of, any other rights and remedies available at law or in equity.

6.     In addition, if an Event of Default has occurred and is continuing, from and after the date such Event of Default occurred, the entire outstanding Principal Amount of this Note and, to the extent permitted by applicable law, any unpaid interest from time to time due thereon will bear interest, payable on demand, at the rate of eighteen percent (18%) per annum; provided, however, upon the cessation or cure of such Event of Default, this Note will again bear interest at the rate of fourteen percent (14%) per annum, as set forth in Section 1.

7.     This Note may be prepaid in whole or in part without advance notice, premium or penalty.

8.     Each maker, surety, or endorser hereon severally waives grace, demand, presentment, notice of intent to accelerate, notice and protest, and notice of acceleration, and consents that time of payment may be extended without notice.  And it is hereby specially agreed that if this Note is placed in the hands of an attorney for collection, or collected by suit or through Probate or Bankruptcy proceedings, the undersigned agrees to pay reasonable attorney's fees additional on the principal and interest then due hereon. Notwithstanding any provision hereof to the contrary, no provision in this Note shall require or permit the collection of interest or other charges in excess of the maximum rate permitted by applicable State or Federal law. If any such excess is provided for, or adjudicated to be so provided for, any such excess shall be, at the holder's option, applied either as a credit against principal or refunded to maker hereof.

9.      Lender may assign this Note.

10.      **THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES**.

11.      **THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES**.


**JET OILFIELD SERVICES, LLC**


*Thomas Smith*

By:      Thomas Smith

Title:      CEO